## 9216

### ETHEREDGE v. ÆTNA INS. CO.

#### (86 S. E. 687.)

INSURANCE. CONTRACTS. CONSTRUCTION. DEEDS. ISSUES. REFORMATION OF CONTRACT. EVIDENCE. WAIVER. APPEAL AND ERROR. CHARGE.

1. TRIAL—DIRECTION OF VERDICT—QUESTIONS FOR JURY.—In an action on a fire policy, the Court properly overruled a motion to direct a verdict, where plaintiff offered evidence of ownership of the insured property, and the defendant attempted to disprove it; the question being one of fact for the jury.

2. CONTRACTS—INSURANCE.—The technical rules of law governing the devolution of land titles are not necessarily to be followed in ascertaining the meaning of insurance contracts, in construing which the character and capacity of both insurance agents and the insured cannot be ignored.

3. ESCROWS — DELIVERY . IN ESCROW — DEED — EFFECT BEFORE PERFORMANCE OF CONDITION.—The deposit of a deed in escrow, to be delivered to the grantee on payment of the consideration stated, passes no interest prior to the performance of the condition.

4. DEEDS—DELIVERY—ISSUES.—Where the testimony made an issue as to whether the purchase money, to be paid the holder of a deed in escrow before its delivery had ever been paid, the refusal to direct a verdict was proper.

5. EVIDENCE—PAROL EVIDENCE—INSURANCE POLICY.—Where an agent of the owner of property procured a policy of insurance thereon, but through mistake of the insurance agent the agent is named as owner, the real ownership being of the essence of the contract, may be established by parol evidence although it varies the writing in a material regard.

6. INSURANCE—INSURED.—Who is "the insured" in a contract of insurance may sometimes be established by proof other than the written policy, for the written paper will not be substituted for the real agreement between the parties to the contract of insurance.

7. INSURANCE—INSURED.—Where one as agent for his wife instructs the agent of an insurance company having a policy on property in her name to renew it, and pays the premium therefor, and the insurance agent consents, the contract of insurance is complete, and for the benefit of the wife, it matters not whose name by subsequent manipulations was writ in the policy.

8. INSURANCE — ACTION ON POLICY — OWNERSHIP — EVIDENCE — SUFFICIENCY.—Evidence in an action on an insurance policy examined, and *held* to show ownership of property in the plaintiff, and knowledge of defendant's agent of that ownership.

9. INSURANCE—CONTRACT OF INSURANCE—CONSTRUCTION.—An insurance policy must be construed according to the intent of the insurance

agent and the owner's agent at the time of making the policy, and not strictly upon the terms of the policy.

10. APPEAL AND ERROR — MATTERS REVIEWABLE — PRESERVATION OF GROUNDS—Where, in an action on an insurance policy by one not named as beneficiary, the defendant for the first time on appeal insists that the contract must be reformed before the plaintiff can recover, the issue is made too late and cannot be considered on appeal.

11. APPEAL AND ERROR.—An issue not made on Circuit cannot be raised on appeal.

12. INSURANCE—REFORMATION OF CONTRACT.—Where an insurer conceives that a policy sued upon should be reformed so as to express the real agreement of the parties, it should ask for that remedy in its answer.

13. ISSUES.—Where parties to an action have gone to trial upon plain legal issues arising on contract, there is no substantial reason to set aside the verdict, and enquire through the agency of the Court of equity if the contract ought to be reformed, and in that event to again remit the parties to the Court of law.

14. ISSUES.—Where a defendant having the right to suggest an equitable issue, and have it tried before the legal issues in an action on contract, waits until after the cause has been disposed of on the legal issues, it is then too late to reopen the case for the trial of the equitable issue.

15. APPEAL AND ERROR—PLEADING—AMENDMENTS.—An amendment which makes no substantial change in complaint is redundant, and will not be reviewed on appeal by defendant.

16. APPEAL AND ERROR — INVITED ERROR — ADMISSION OF EVIDENCE. — Where, in an action on an insurance policy, knowledge of the company's agent of title in plaintiff, although he made out the policy to another, is sought to be shown by former policies issued through him, the introduction of the policies, while error, does not warrant reversal, where the plaintiff testified on the issuance of the policies and defendant objected thereto on the ground that the policies were the best evidence.

17. INSURANCE—EVIDENCE.—The admission of other policies issued by the same insurance agent to the same party on the same property is relevant to show such agent's knowledge and familiarity with the title to the property.

18. EVIDENCE—APPEAL AND ERROR.—The needless introduction of written policies, especially when called for by the defendant to show a collateral fact, is not ground for reversal of judgment.

19. TRIAL—RECEPTION OF EVIDENCE—CUMULATIVE EVIDENCE.—When the original deed to property is in evidence to show title to insured property in the plaintiff, a copy thereof was properly excluded as merely cumulative.

20. EVIDENCE—APPEAL AND ERROR.—The exculsion of cumulative evidence is not reversible error.

21. CHARGE.—A request to charge having no relevancy to the testimony is properly refused.

22. DEEDS—FAILURE TO PAY CONSIDERATION—EFFECT.—Where husband and wife convey the former's land and deliver the deed, the nonpayment of the consideration does not defeat the title which the grantee later reconveys to the wife.

23. INSURANCE — CONDITIONS IN POLICY — WAIVER — EVIDENCE. — A requested instruction that there was no evidence of waiver by an insurance company of the terms of· a policy was properly refused, where there was evidence that the defendant's agent knew of title in another than the beneficiary named, but made the policy to him in spite of a condition therein that the beneficiary must be the real and unconditional owner of the insured property.

24. INSURANCE—WAIVER.—In an action on a policy containing many stipulations made for protection of the insurer, where there is testimony tending to ·prove the waiver of any one of them, the Court could not direct the verdict, there was no evidence of waiver of the terms of the contract.

25. INSURANCE—WAIVER.—Where there was evidence showing a failure of the insurer to return the premium received on a contract of insurance, and tending to show that knowing the state of title to property insured, the insurer elected when the policy was written, not to stand on the stipulation as to unconditional ownership, it was for the jury to say whether or not the company elected to stand on the stipulation, that the policy should be void unless written in the name of the one really insured.

Before BOWMAN, J., Aiken, October, 1914.    Affirmed.

Action by T. Geneva Etheredge and L. B. Etheredge against Ætna Insurance Company. From judgment for plaintiffs, defendant appeals. The facts are stated in the opinion.

*Messrs. Frank G. Tompkins* and *Croft & Croft,* for appellant. The former cites: *As to amendment of complaint:* 55 S. C. 90-98; 51 S. C. 415; 86 S. C. 98; 92 S. C.

FOOTNOTE.—See note in 16 L. R. A. (N. S.) 1165 to 1264, on the parol evidence rule as varying or contradicting written contracts, as affected by the doctrine of waiver or estoppel as applied to policies of insurance; and in 33 A. & E. Ann. Cas. 1914c, 59 to 80, on the admissibility of parol evidence to explain or modify fire insurance contract as evidenced by written policy.

297. *As to failure to return premium:* 55 S. C. 450; 68 S. C. 387. *No evidence of waiver:* 88 S. C. 221; 72 S. C. 355; 81 S. C. 541; 83 S. C. 262. *Construction of insurance contract:* 36 S. C. 213.

*Messrs. E. L. Asbill* and *Gunter & Gyles,* for respondents, cite: *As to relevancy of evidence:* 75 S. C. 264; 76 S. C. 276; 73 S. C. 352; 60 S. C. 70; 62 S. C. 145; 63 S. C. 559; 48 S. C. 195. *Copy of agent's license:* Civil Code, secs. 2697, 2704. *Amendment of complaint:* 12 S. C. 173; 68 S. C. 403; 18 S. C. 315; 79 S. C. 272; 82 S. C. 2; 9 S. C. 334; 96 S. C. 19; 93 S. C. 79. *Agent's knowledge imputed to his principal:* 79 S. C. 529; 75 S. C. 315; 52 S. C. 228; 36 S. C. 213; 16 L. R. A. 33. *Retention of premium as waiver:* 57 S. C. 358; 79 S. C. 526; 81 S. C. 152. *Delivery of deed in escrow:* 19 S. C. 216; 3 Words & Phrases, 2464; 117 Ga. 814; 45 S. E. 68. *Entry of wrong name as insured:* 67 S. C. 407; 74 S. C. 246; 78 S. C. 390.

October 20, 1915.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

History: Verdict for plaintiff for $2,000 on a policy of insurance against loss by fire; policy made 3d July, 1912; covering a brick store at Leesville; total destruction by fire 7th November, 1912.

The plaintiff, Mrs. Geneva Etheredge, is the wife of the plaintiff, L. B. Etheredge; and the husband is joined as a necessary formal party.

When the policy was made the defendant company acted thereabout through its agent, E. J. Etheredge, and the plaintiff, Geneva, acted thereabout through her husband, L. B. Etheredge. The wife of E. J. Etheredge is Mrs. M. B. Etheredge. The men, L. B. and E. J. Etheredge, are only remote kinsmen. The first is a doctor and resides at Wagener, in Aiken county. The second is a dentist, and was a

bank president, an insurance agent, and a man of some other activities, and resided at Leesville, in Lexington county.

"The insured" named on the policy, when it was put in evidence, is L. B. Etheredge.

The suggestion of the plaintiff is, that Geneva Etheredge ought to have been named therein, and that in the beginning she was in fact named therein.

The plaintiff, Geneva, alleges also, of course, that she was and is now the sole owner of the property which was insured and which was destroyed.

The contract of insurance provides: "If the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the assured in fee simple * * * this entire policy shall be void."

The answer alleges, that "at the time the policy was written neither the said L. B. Etheredge nor his wife, T. Geneva Etheredge, were the owners in fee of the property here in question * * * and are not now the unconditional and sole owners of the said property, and that neither of the said parties had an insurable interest therein."

That issue and one other which suggests Geneva was not "the insured," are primary; all other issues are secondary.

The suggestion of the defendant by testimony and by argument is that M. B. Etheredge, wife of E. J. Etheredge, was the owner of the property. Of the twelve exceptions the appellant has abandoned the 7th, the 9th and the 12th.

The other nine exceptions have been argued under six topics, and we shall pursue that classification, but not in the order which the appellant did, yet we trust comprehensively. These are the topics:

As to pleading: Amendment of the complaint ought not to have been allowed, if the complaint did not before it state a case.

As to substantive law: Verdict ought to have been directed on the proof as it stood before and after amendment.

As to charge: If the jury find that S. J. was instructed to write the policy in the name of Geneva, and actually so wrote the policy, but afterwards changed the name of L. B. without the knowledge and consent of Geneva, then Geneva would not be bound hereby.

As to refusal to charge: If the deed by Cooley to Geneva in plaintiffs' claim of title, was never in fact delivered, then the fee remains in L. B., and the plaintiff, Geneva, can't recover in this action, even though the policy was in her name.

As to competent and incompetent testimony: Policies in other companies ought not to have been admitted; and license from commissioner of insurance ought not to have been admitted; and copy deed, Geneva to M. B., ought to have been admitted.

As to refusal to charge: You are instructed that there is no evidence of waiver by the defendant, of the written terms of the policy contract.

There is no denial the house was insured, the premium paid and the building burned, but only that the plaintiff, Geneva, did not own it, and had no contract for insurance.

1. The kernel of the case was exposed at the end of the testimony, when the defendant moved for a verdict, upon the ground that the proof showed, and only showed, that neither Geneva Etheredge, nor her husband, L. B. Etheredge, had ownership of the property when the policy was made or when the fire happened; and that, therefore, neither of them could recover on a policy made to L. B. Etheredge; and there was no proof that Geneva ever had a contract of insurance with the Ætna.

The plaintiffs have never pretended since suit was brought that L. B. Etheredge had any insurable interest in the prop-

erty.   The complaint alleges, "that he .is the husband of Geneva, and was her agent in securing said insurance."

It is true that in the letters written before, action was brought by E. L. Asbill, Esq., one of Mrs. Geneva Etheredge's attorneys here, it was asserted by him that at the writing of the policy the title was in Mrs. M. B. Etheredge, and that L. B. Etheredge held from her purchase money notes; and, therefore, he had an insurable interest in the house.

It is also true that in a letter written before suit by L. B. Etheredge, to Middleton, the Atlanta agent, it was asserted by the writer that the property had been sold to M. B. Etheredge, and to better secure the vendors the policy had been made to L. B. Etheredge.

In those letters Mr. Asbill and L. B. Etheredge made an entirely different case from that made by Mrs. Geneva in her pleading and in her testimony at the trial on Circuit.

The Court below clearly had no right to judge betwixt the two cases.   If they were inconsistent, and they were, it was the sole province of a jury to determine which was the true case.

It cannot be denied that the evolutions of the title to the house in issue have been unusual, and are not free from challenge.

In a contest betwixt legal titles instruments of writing thereabout must often be strictly construed, and that which may be called the real intent of the makers is sometimes defeated.

But this cause does not demand a technical application of the rules of law governing the devolution of land titles. Only a contract is in issue here.   Insurance is well nigh a universal business.   The companies seek risks like the commercial travelers.   The contracts (not including the printed policies) are written by all sorts of persons, with and without knowledge of land titles; and with the owners of property who have no larger skill about the matter.

Enlightened policy, for the companies and for the public, ought in every case to ascertain, what the real truth is, as far as that is permissible under the rules of law.

And to that end, the character and the capacities of those who engage in the business of writing insurance and of those securing insurance cannot be ignored.

In the instant case the testimony tends to show: That E. J. Etheredge had acted as agent for the defendant at Leesville, a small town, for eight or ten years; that he was licensed by the State insurance commissioner to do the insurance business; that he was removed by his principal in August, 1912, because the company "was not satisfied with the business I was giving it," and another agent was designated; that E. J. Etheredge had aforetime written policies of insurance on this same storehouse and to Mrs. Geneva Etheredge, and for the same Ætna Company; that E. J. Etheredge at these times knew that Geneva owned the property, for he probated the deed to her.

It is conceded he then knew all the facts.

Up to this point there is no real difference betwixt the parties. The real issue between them arises out of the transaction next recited.

In March, before the instant policy was written in July, Mrs. Geneva executed a deed of the property to Mrs. M. B. Etheredge, wife of the agent.

That deed was never recorded, but was placed in a bank, of which E. J. Etheredge was president, with a memorandum instruction on the envelope to one Shealy, the bank's cashier, to deliver the deed to the vendee when the purchase price should have been provided for. The price was $2,500, of which $900 was to be paid in cash and $1,500 was to be delivered in purchase money notes by M. B. Etheredge, and presumably to Geneva.

The testimony leaves it in doubt whether the notes were even executed. L. B. Etheredge testified that they were and

then testified they were not.   His is the only testimony thereabout.

When the Atlanta agent of the insurance company went to Leesville to investigate the loss, E. J. Etheredge exhibited to him the above described deed, and that act is the seed of this defense.

The testimony makes an issue as to whether the $900 was ever paid.   Both L. B. Etheredge and his wife denied it. Middleton, the Atlanta agent, swore that E. J. Etheredge told him that his wife, M. B. Etheredge, had paid the $900. That, of course, was hearsay, and is the only testimony thereabout.

That statement by Middleton was denied by E. J. Etheredge.   The Circuit Court has no right to find the fact.

If it be true, as is alleged and as was testified to, that Geneva signed the deed and put it in escrow into the hands of Shealy, to be delivered only upon payment to him by M. B. Etheredge of the price; and if the payment was not made, then title and ownership never went out of Geneva.   The Court so charged the jury, and the charge has not been challenged.

The Court was clearly right, therefore, to leave to the jury the determination of the fact upon which the law was predicated; and was right, on that issue, to refuse to direct a verdict for the defendant.

2. But he who is named in the policy as "the insured" is L. B. Etheredge, confessedly not the owner.   That makes the second primary issue.   The evidence does not show that L. B. had any interest, beyond the mere suspicion that the notes were made to him.   As before stated, the testimony does not at all prove that the notes had been even executed; and there is no competent testimony that if executed they were made to him.

The letter of the contract of insurance, the forfeiture clause relied upon and before quoted is, *"the insured"* must

be the real owner,—these two rights, title and contract must unite in one person.

The testimony tends to show the existence of one, it must tend to show the existence of other. If the policy alone must be looked to, the right by contract does not exist in Geneva. The policy names L. B. as the contracting party. But the words of the policy are not always conclusive. If the fact be that Geneva was the contracting party—"the insured"—then the fact may sometimes be established by proof other than by the writing; and she may thus show that she is both "owner" and "insured."

That is upon the familiar principle that if a parol agreement shall be reduced to writing, and some part of it which goes to the *essence* of the agreement shall be omitted or wrongly put down, by the mistake of one or both parties to it, then the real fact may be shown and the fact will determine the rights of the parties. 6 R. C. R., page 623.

This is the core of the testimony about the making of the contract of insurance:

*L. B. E. testified:* Q. Doctor, when this insurance was taken out on the premises did you go to Dr. Etheredge? A. I told him to *reinsure* that property, and I was acting agent for my wife, and I gave him $47.00. Q. *Did you look at this policy?* A. He gave it to me in an envelope. I kept my papers in that bank. Q. Was he an officer of that bank? A. Yes, sir; president. Q. Who was cashier? A. W. A. Shealy. Q. State whether or not you filed the paper in the bank? A. I gave it to Mr. Shealy. I left that in there with the balance of my papers. Q. You filed that without opening it or looking at it? A. Yes, sir. Q. State, at that time, whether you knew that policy was issued to L. B. Etheredge or not? A. I could not say that. I did not see it. I was not up there, and it was on the inside of the envelope. Q. Did Mrs. L. B. Etheredge ever see that policy until after the fire? A. No, sir.

*E. J. E. testified:* Q. At the time that this policy was issued, did you know the title to that property was in T. Geneva Etheredge? A. I never had heard that she had sold it. Q. You knew she was going to make deed to your wife? A. Yes, sir; she had made it. Q. You knew the deed was in her? A. Yes, sir. Q. When you wrote that policy out, who did you make it to? A. When I issue a policy to a person I issue three—I have got a register which I keep an absolute copy of this policy in—with the exception of the form whatever writing and filling in, and the attachments, I make three of them. I put one on this policy and one on my register and on the daily report to the company—I sent one. When I commenced to write this policy I put it down "T. Geneva Etheredge," on the face of it, but when I began to fill out my daily report I began to think about it; I said Mrs. T. Geneva Etheredge has placed a title to my wife, and just thinking Dr. Etheredge told me to renew the policy— Q. In whose name was it before it was renewed? A. To his wife. I started to do that, and I said to myself, he is acting as agent for his wife, and I had just better put it in his name. Q. Who did that scratching out? A. I did it, at the time I was writing the policy. When I first started to write the policy I put it "T. Geneva Etheredge," and as soon as I did it I decided it ought to be in the name of L. B. Etheredge. My daily report shows that it was L. B. Etheredge. Q. Were you acting as the agent of the company when you did that? A. I was the agent; yes, sir. Mr. Middleton will tell you that. Q. State whether or not you received the premium for this policy? A. Yes, sir; I did; doctor paid me. Q. State whether or not you turned that premium over to the company? A. Yes, sir; forwarded them a draft for the amount. Q. Now, Mr. Etheredge, you say you made that change— Mr. Tompkins: We object. Q. After you had written this policy did you make the change before you had made out your daily report, or not? A. Yes, sir. Q. Had you signed the paper, as agent, before you made that change?

A. I filled it all out; that is, the body of the policy. Q. And signed your name? Mr. Croft: Let him tell. A. I filled that out and signed it. Q. Did you sign your name there? A. Yes, sir. Q. You wrote the inside, and filled out the whole inside, and when you got through you folded it over and endorsed it? A. Yes, sir. Q. Now, after you filled out the inside, turned it over and endorsed it, you put it in envelope? A. Yes, sir; I usually did. Q. And you delivered it to Dr. Etheredge, and he went, where, that day? A. He put it in the bank up there. Q. Is there any mistake about that transaction? A. I could not say positively. He usually put all of his papers there. Q. Was that the truth, as you told it, then? A. I gave him the papers— Q. The policy, you mean? A. Yes, sir. Mr. Croft: We offer these two letters in evidence. Two letters received and marked Exhibit A and B for the defense. Q. After you had made this policy out and delivered it to Dr. Etheredge, where did he go that day? A. I do not know, sir. If my memory serves me right, he put it in the bank. I found it there afterwards. Q. After you delivered him this policy; after he got it in his hands—when did you see it again? A. I do not remember. Q. Did you see it before it was put in evidence this morning? A. I think the doctor had the policy. He came to Leesville after the fire, and I think he had it with him. Q. Well, now, you have got a very long scratch here (indicating); what was written there? A. T. Geneva Etheredge. Q. Where was the T.? A. I do not know where it was; it was there. Q. How was the name spelled? A. T. Geneva, in full, and then Etheredge. Q. What made you scratch out that date? A. In changing the policy, possibly I did not complete it the same day. You have got to make out your daily report the day the policy is issued. But that corresponds with the daily report I sent to the home office. That daily report will show that I could not have changed the policy except before I mailed the daily report. I had to make the dates correspond. Q. What I want to

know is, did you write out this stuff, and while you were writing out that did you change it, or wait until the next day? A. I do not know exactly when I scratched it out, but I scratched it before I sent my daily report, or gave the policy to Dr. Etheredge. Q. There is no doubt about that? A. No, sir.

It is manifest the insurance agent did not carry out the instruction of L. B. Etheredge to insure his wife's house.

There is no testimony at all that the insured named in the policy, L. B. Etheredge, had any interest in the property.

The proof is plain that his wife, Geneva, was the owner, at the making of the policy and at the fire.

The testimony of E. J. Etheredge, just quoted, suggests the idea that he thought that his wife, M. B. Etheredge, was the owner, and L. B. Etheredge was her creditor; and having that in mind he erased the name of Geneva, which he had first written, and inserted that of L. B., the creditor. In that he was mistaken; for if his wife, M. B., was the owner, the policy ought to have been written to her.

So that the agent made two mistakes; he thought his wife was the owner, and he thought L. B. was her creditor.

Acting on these assumptions, he ignored his instruction from L. B., and his first impulse and agreement, to write the policy to Geneva.

It is plain that both the instincts of justice and the rules of law will not, under such circumstances, substitute the paper writing for the real agreement between the parties to the contract of insurance. 1 Beach on Ins., sections 396 to 545; *Montgomery* v. *Ins. Co.,* 67 S. C. 400, 45 S. E. 934; *Pearlstine* v. *Ins. Co.,* 74 S. C. 246, 54 S. E. 372.

It is true, as suggested by the defendant's last request, that if Geneva was the real owner, and though the insurance agent knew the fact, and yet named another in the policy, then the agent's knowledge, standing alone, would not cause the policy to inure to Geneva.

But it was for the jury to say whether that case, or whether the case set up by the plaintiff, is true.

The whole matter consists in a single principle, and that is the intention of the two agents, one acting for Geneva and one acting for the company, when the contract of insurance was entered into.

If these parties, at the outstart, agreed to insure the interest of Geneva, then that is now the binding contract, it matters not whose name, by subsequent manipulations, was writ in the policy.

3. But the appellant insists, that granting the name of Geneva ought in equity according to the circumstances to be now in the policy, yet the policy must be so reformed by a Court of equity before suit can be had upon it in a Court of law.

It would be a sufficient answer to that suggestion to say that no such issue was made in the Circuit Court, and it may not, therefore, be made here.

If the defendant conceived that the policy needed, under the allegations of the complaint, to be reformed by a Court of equity, so as to express the real agreement, then it ought to have asked for that remedy.

The parties went to trial upon the two main issues whether the plaintiff, Geneva, was the owner of the property, and whether the plaintiff, Geneva, had a contract of insurance with the Ætna. There is no substantial reason, in law or in fact, to now set aside the verdict thereon, and enquire through the agency of a Court of equity if the policy ought to be reformed, and in that event to again remit the parties to a Court of law.

The defendant had the right, *in this case,* to suggest the equitable issue and have it tried before the law issue was tried. It did not do so, and it is now too late to make that demand.

4. The amendment to the complaint, proposed by the plaintiff at the close of the testimony, and allowed by the Court, was redundant. The complaint alleged a contract of

insurance betwixt Geneva and the Ætna Company; the evidence of it by a policy with her name written in it; the erasure of her name and the unauthorized insertion of the name of L. B. Etheredge.   The amendment does not make a substantially different statement, but practically restates that which was alleged in the 5th paragraph of the complaint.   The appellant admits that after the amendment had been allowed there was substantially no change in the complaint.

5.  The plaintiff undertook to prove that the insurance agent was familiar with the title to the property because he had theretofore issued to Geneva two policies on the same property by other companies; and to that end the other policies were introduced and allowed, over the objection of the defendant.

The objection goes to relevancy and not to competency of testimony.

It would have been sufficient, in order to show knowledge by a course of dealing, to prove that E. J. Etheredge had a knowledge of the true ownership because he had issued policies theretofore on the same house to Geneva.   It was not necessary to produce the polices to show that; for they proved no more than the words of the witness.

But the needless introduction of the policies is no ground for a reversal of the judgment.   More than this, the printed record shows that when the witness was testifying about former insurance, this occurred: "Mr. Tompkins: We object; the written instrument is the best evidence."   The defendant demanded these policies.

And the same is true with reference to the license to do business issued to E. J. Etheredge by the State commissioner of insurance.

The defendant offered in evidence a *copy* of the deed from Geneva to M. B. Etheredge, which copy E. J. Etheredge made and gave to the Atlanta agent, Middleton, on the visit of the latter to Leesville, and hereinbefore referred to as the seed of the defense.

The Court rejected the copy deed, and upon the plain and correct ground that the deed itself was in evidence; that there was no natural difference betwixt original and the copy; and the proof of the copy would have been cumulative.

6. We think there is no force in the suggestion that Geneva had no title because her grantor, Cooley, never had title. He got title from L. B. and Geneva in June, 1909. It is true Cooley paid only $100 on the purchase price.

But he conveyed the property by deed back to Geneva in October, 1909, and the deed was duly put upon the record. It was furthermore admitted by defendant's counsel that (Geneva) in 1910 and 1911 owned the property.

The request, therefore, had no relevancy to the testimony.

7. We have reserved our final consideration, the last topic, that raised by defendant's sixth and refused request.

The appellant there asserted that there was no evidence of waiver by the defendant company, of the terms of contract written in the policy.

In a policy so long as this, there are many stipulations made for the protection of the company. The company might choose to waive one or two or all of them.

If it did waive only one, and there is evidence tending to prove that, then the Court could not have directed the jury that there was no evidence of waiver.

The plaintiff suggested only two acts of waiver by defendant: (1) A failure of the company to return the premium which was paid; (2) the election of the company when the policy was written not to stand upon that clause in it about unconditional ownership.

As to the first act, there was no objection to the testimony of L. B. Etheredge, or Middleton, touching a failure to return; and there is no exception to the charge of the Court about the same subject. No issue thereabout is consequently before us.

As to the second act, there was much testimony tending to show that when the policy was written the agent of the company knew Geneva had the title; that he knew the stipulation in the policy about ownership; that he knew L. B. Etheredge wanted the house reinsured in Geneva's name; that he knew his duty was so to write the policy.

From those facts and circumstances, it was left to the jury to say, whether or not the company elected to stand on the letter of the stipulation, to wit, that the policy should be void unless written in the name of the owner and the really insured.

We are of the opinion that the judgment of the Circuit Court must be affirmed, and it is so ordered.