CRANE, BREED & BREED *v.* THE CITY INS. CO.

(*Circuit Court, S. D. Ohio.* ———, 1880.)

1. FIRE INSURANCE—CONTRACTS—CONSTRUCTION. — Contracts of insurance are to be construed as other contracts. All parts of the contract are to be taken together; they are to be liberally construed, and such meaning to be given to them as will carry out and effectuate to the fullest extent the intention of the parties, and no portion of it will receive such a construction as will tend to defeat the obvious general purpose of the parties entering into the contract.

2. SAME—SAME—SAME.—A policy of insurance provided that the same should be void " if the, above-mentioned premises shall be occupied or used so as to increase the risk; * * * * or if the risk be increased by erection of or occupation of neighboring buildings; or if by any means whatever within the control of the assured, without the consent of the company indorsed hereon." *Held,* that the terms " increase the risk," must be construed as meaning an essential increase of the risk.

3. SAME—SAME—SAME.—Such policy also provided that "the insured has permission to make alterations and repairs incidental to the business." *Held,* that this clause must be understood as embracing such alterations in relation to the carrying on of the business of the insured as would not essentially and materially increase the liability of the property to be destroyed by fire.

4. AGENCY—NOTICE.—After such policy had been issued and delivered by the regular agent of the company, the company was not chargeable with knowledge subsequently acquired by the insurance agent who placed the insurance in the company.

*Hoadly, Johnson & Colston,* for plaintiffs.

*Moulton, Johnson & Levy,* for defendant.

SWING, D. J., (*charging jury.*) This action is brought by the plaintiffs to recover the sum of $794.40 upon a policy of insurance issued by defendant to the plaintiffs on the ninth day of November, A. D. 1879, insuring plaintiffs against loss by fire upon a two-story brick house used by them as a manufactory of packing boxes, burial cases, etc., in Cincinnati, Ohio. The plaintiffs aver substantially the payment of the premium, the issuing of the policy of insurance, and damage by fire to the property to the amount of $794.40; that due notice and proof of loss were made; and that plaintiffs have kept and performed all their conditions of said policy, and pray judgment for $794.40.

The defendant answers, substantially, that after the making and delivery of the policy it became null and void, because by the terms of the policy it is provided that if the premises therein described shall be occupied or used so as to increase the risk, or if the risk be increased by any means whatever, within the control of the assured, without the consent of the company indorsed upon said policy, it should be void; that without the consent of the company so indorsed the plaintiff did increase the risk by the sinking of an artesian

well on said premises, in the sinking of which a vein of gas was struck, which, coming in contact with a gas jet near by, caused an explosion, and set fire to the building; that in the sinking of said well plaintiffs were engaged in an unusual and extraordinary undertaking, not customary or necessary to the business they were carrying on, and materially increased the risk and hazard of fire, in violation of the policy, and by which the policy became void. By reason whereof they deny liability upon said policy.

The plaintiffs, by reply, deny generally the allegations of the answer, and allege that by the terms of the policy they had a right to make alterations and repairs incident to their business, which was that of manufacturers of undertakers' goods, heating apparatus, etc., and that the sinking of said artesian well was an alteration incident to said business, within the meaning of said policy. And, further, that the agent of the insurance company had full knowledge that the plaintiffs were boring said well, and made no objections thereto; and that the statement in the proof of loss that the well had reached 267 feet is not correct, but it should be 230.

Three issues are presented by these pleadings. The first is raised by the answer of the defendant, and is substantially that the plaintiffs, without the consent of the defendant indorsed upon the policy, increased the risk by sinking an artesian well upon the premises insured, and that by the sinking of the well gas was struck, which, coming in contact with a gas jet, caused the burning of the building insured.

The second is that the sinking of the well was embraced in the clause of the policy permitting alterations incident to the business; and the third is that the agent of the defendant had notice of the sinking of the well while the work was progressing; and made no objection thereto.

It may be said generally that contracts of insurance are to be construed as other contracts. And among the most important rules for their construction is, that all parts of the contract are to be taken together; and they shall be liberally construed; and that such meaning shall be given to them

as will carry out and effectuate to the fullest extent the intention of the parties, and that no portion of it will receive such a construction as will tend to defeat the obvious general purpose of the parties entering into the contract. Applying these general principles to the construction of this contract generally, and to the particular clauses brought especially to our notice by the pleading, we may say the general object and purpose of this contract was to secure the plaintiffs against loss by fire upon a certain-described property, then in use for particular purposes described in the policy, and that this insurance was effected by the insurance company upon said property upon the condition that the property and its use should not be essentially and materially changed; and applying the rules to the particular clause pleaded by the defendant, the language of which is:. "If the above-mentioned premises shall be occupied or used so as to increase the risk; * * * or if the risk be increased by erection of or occupation of neighboring buildings; or if by any means whatever within the control of the assured, without the consent of the company indorsed hereon."

If we give this clause its literal and restricted meaning, any use whatever of the premises by the defendant, by which the liability to fire was increased to any extent, would avoid the policy; but this would not be in accordance with the rules of construction we have laid down, and it could not be said that such was the sense in which the parties understood and used them at the time of the execution of the contract. We think, therefore, that the terms "increase the risk" must be construed as meaning an essential increase of the risk, and so applying the same rules of construction to the clause of the policy relied upon by the plaintiffs, to-wit: "The insured has permission to make alterations and repairs incidental to the business." If we give this clause its literal meaning it would be extended to embrace all alterations which the parties might desire to make connected with the carrying on of the business, although it might increase, to an unlimited extent, the liability of the premises to be destroyed by fire; but such a construction would not be in accordance with the rules already

v.3,no.10—36

alluded to, and certainly could not have been the sense in which the parties understood them at the time. I think, therefore, that this clause must be understood as embracing such alterations in relation to the carrying on the business of the plaintiffs as would not essentially and materially increase the liability of the property to be destroyed by fire.

If the jury find from the evidence that the sinking of the well was without the consent of the company, and materially and essentially increased the liability of the property insured to be burned, the policy would be avoided, and the defendant will be entitled to your verdict. But if the sinking of the well did not materially and essentially increase the liability of the property to be burned, it would not avoid the policy, although its effect may have been to render it in some degree more liable to be burned than it otherwise would have been.

If you find from the evidence that, in the business in which these premises were used, a well would be beneficial, and such well as the plaintiff's sunk had, prior to and at the date of the policy, been sunk and in common use by establishments of the general character of the plaintiffs, and the sinking of such well did not essentially and materially increase the liability of the premises to be burned, the plaintiffs had the right to sink the well, and the sinking thereof would not avoid the policy.

Upon the question raised by the reply, that the agent of the company, having knowledge of the digging of the well, and, making no objections, the assent of the company is to be presumed, I may say to you that, although Mr. Young, an insurance agent, placed the insurance in the defendant's company, and procured the regular agent of the company, Mr. Pollack, to issue the policy, after the issuing and delivery of the policy to the plaintiff, Mr. Young's relations to the company ceased, and the company would not be chargeable with any knowledge of his acquired after that time in regard to the sinking of said well.