## 7074

### SLAWSON v. EQUITABLE FIRE INS. CO.

1. INSURANCE—IRON SAFE CLAUSE—PAROL EVIDENCE—WAIVER.—In an action on a fire insurance policy parol evidence is admissible to show at time of issuance of policy by agent the iron safe clause was waived.

2. IBID.—IBID.—IBID.—SECONDARY EVIDENCE.—In an action on a fire insurance policy where there is evidence of waiver of iron safe clause and of loss of books and invoices by fire, parol evidence is admissible to show value of stock of goods insured and destroyed by fire.

3. IBID.—IBID.—ISSUES.—There being an issue in this case as to whether the iron safe clause had been waived, it was proper for trial Judge to submit that issue to the jury, although the policy introduced by plaintiff and alleged by him to be the contract and so admitted by answer contained the iron safe clause.
*Divided Court.*

4. REHEARING refused.

Before KLUGH, J., Orangeburg, October term, 1907. Affirmed.

Action by H. L. Slawson against Equitable Insurance Company *et al.* From judgment for plaintiff, defendant, insurance company, appeals on the following exceptions:

1. "Because his Honor erred in overruling defendant's objection to the following question asked H. L. Slawson, plaintiff, upon his examination in chief: 'What was said at that time about the policy; what did Mr. Amaker tell you?' Error assigned being that it is incompetent to introduce any testimony going to explain or vary the written contract which was sued on.

2. "Because the presiding Judge erred in overruling defendant's objection to the following question asked the plaintiff on his direct examination: 'State to the jury what was burnt in that store; what the stock consisted of?' Error assigned being that the contract sued on provided how such loss should be established and how the books and papers necessary to make up the proof of loss would be preserved, and oral testimony was incompetent to make up such proof of loss.

3. "Because the presiding Judge erred in permitting the plaintiff to testify orally as to an alleged waiver of any of the provisions of the policy. Error assigned being that the policy before the Court provided that its terms could not be waived by an agent and only in writing, as stipulated in said policy.

4. "Because the presiding Judge erred in permitting the plaintiff to testify orally as to the amount of goods in his store, the exception being that the contract sued on provided that proof of loss should be made in writing in the manner therein specified, and further error is assigned in that the presiding Judge ruled: 'That the proof to show the failure of the company to deliver the policy is inter-

posed to obviate the difficulty.   I will allow the testimony to go in, and if it is not competent, I will so instruct the jury."

5. "Because the presiding Judge erred in allowing the plaintiff to testify that he had taken stock up to seventeen hundred and thirty-eight dollars.   Error assigned being that the contract provided the mode in which the plaintiff's loss should be ascertained.

6. "Because the presiding Judge erred in allowing the plaintiff to answer the following question: 'At the time that this insurance was taken out was there anything said about this iron safe?'   Error assigned being the contract sued on having provided for an iron safe or the keeping of the books in some safe place not exposed to fire, it was incompetent for the plaintiff to testify as to any oral understanding varying said contract, and further that the contract also provided that the agent whose variance of the contract it was attempted to introduce could not bind the company by any agreement to waive any of the provisions of the contract.

7. "Because the presiding Judge erred in admitting in evidence the paper purporting to be a proof of loss.   Error assigned being that it appeared on the face of said paper that it was not made out in accordance with the terms of the policy.

8. "Because the presiding Judge erred in permitting witness, W. Herbert Sandell, to answer the following question: 'I want you to state whether or not the store was well filled with stock?'   Error assigned being that this testimony was incompetent to prove the loss, because the policy provided how such loss should be ascertained or proved.

9. "Because the presiding Judge erred in allowing the same witness to answer the question:   'What did the stock that you took amount to?'   Error assigned being the same as that stated in last exception.

10. "Because the presiding Judge erred in permitting the same witness to answer the question:   'What stock of

goods did he have in the store when you were there?'
Error assigned being the same as in last exception.

11. "Because the presiding Judge erred in allowing the
witness, John M. Antley, to answer the question: 'From
your knowledge of the mercantile business and from what
you saw of the stock of goods in Mr. Slawson's store, what
was that stock worth?' Error assigned being the same as
in last exception.

12. "Because his Honor erred in allowing the same wit-
ness to answer the question: 'Did you have occasion to
observe his stock of goods?' Error assigned being the
same as in last exception.

13. "Because his Honor erred in permitting the same
witness to answer the question: 'How much goods did he
have in there?' Error assigned being the same as in last
exception.

14. "Because his Honor erred in refusing the motion
made by the defendant's attorneys to strike out from the
record testimony above objected to. Error assigned being
that the complaint having alleged that the policy was issued
to the plaintiff and the same being the plaintiff's cause of
action and introduced in evidence by the plaintiff, it was not
competent or proper that testimony should be allowed to
go to the jury to sustain any other contract or agreement
than that sued upon and so produced in evidence by the
plaintiff. And the further error is assigned that the ruling
of the Judge was based upon the theory that the policy
sued on had been suppressed or its contents withheld from
the plaintiff.

15. "Because his Honor erred throughout the taking of
said testimony in allowing testimony so refused to be
stricken out to go to the jury. Error assigned being that
the uncontradicted proof was that said policy had at the in-
stance of the plaintiff been left as security with Banks &
Wimberly, of which firm the agent of the insuring com-

pany was a member, and the plaintiff was by law charged with the knowledge of all the contents of said policy.

16. "Because his Honor erred in charging the jury as follows: 'If the parties to the contract agreed that a failure to observe what is commonly called the iron safe clause should result in a forfeiture of the policy, and if you find that the plaintiff agreed to observe that clause and failed to do so, then that would result in a forfeiture of the policy; if there was no such agreement to that effect, then a failure to observe that clause cannot avoid the policy. That is a question of fact and is one of the issues for you to determine.' The error assigned being that the contract introduced in evidence by the plaintiff himself showed that there was an iron safe clause agreed to and that defendant had asked the presiding Judge to charge the jury to that effect.

17. "Because the presiding Judge erred in charging the jury as follows: 'If, however, he entered into an agreement wherein the terms were withheld from him, then the conditions of the agreement are not binding on him. If the knowledge of the terms was withheld from him through fraud, or even if it was withheld without any fradulent intent, then the terms would not be binding, if he did not have the opportunity of knowing those terms, and if the contract was binding between the parties, he is not responsible for the stipulation in the contract, and the balance of the contract would be binding.' The error assigned being that by the testimony of the plaintiff himself, the policy of insurance was held as collateral security by a firm, of which the company's agent was a member, for a note due by the plaintiff, and that plaintiff was chargeable with the notice of all the contents of said policy.

18. "Because his Honor erred in drawing a distinction in this case between stipulations in the contract which were essential and those which were not essential. The error

assigned being that the iron safe 'clause in the contract was a warranty and an essential part of it.

19. "Because his Honor erred in modifying the defendant's first request to charge, which was as follows: 'The jury is instructed, that under the terms contained in the policy of insurance in this case, the insured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to date of this policy, one shall be taken within thirty days of the issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned. The jury is instructed that, if they find from the testimony that the plaintiff did not take either of the inventories mentioned in this agreement, as therein provided, the same policy became null and void and the verdict must be for the defendant.' By adding these words: 'I charge you *that*, provided you find that there was such an agreement.' Error assigned being that the agreement was attached to the policy put in evidence by the plaintiff as the contract on which he sued, and the jury could not, under any view of the case, determine that there was no such 'agreement.

20. "Because the presiding Judge erred in modifying the defendant's third request to charge, which is as follows: 'The jury is further instructed that if it was agreed that "the assured will keep a set of books and inventories if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in the policy is not actually open for business, or failing in this the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building." And the jury is instructed that if they find from the testimony that the plaintiff failed to keep and perform the agreement mentioned in this clause of the policy, the plaintiff cannot recover and the verdict must be for the

defendant.' By adding these words: "Those instructions will be given you under the same instructions as I have given you about the iron safe clause. I charge you *that,* subject to what I have already charged you, with reference to the iron safe clause: If there was no such an agreement it was not binding, and if there was such an agreement it was binding.' The error assigned being that there could be no dispute, because the plaintiff had himself introduced in evidence as part of his proof this agreement, and was charged with the knowledge of it.

21. "Because the presiding Judge erred in modifying the defendant's fourth request to charge, which was as follows: 'The jury is further instructed that in and by the said agreement between the plaintiff and the defendant company it was provided that in the event or failure to produce such set of books and inventories for the inspection of the company, the policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereof, and the jury is instructed that, if they find from the testimony that the plaintiff failed to keep and perform this agreement, the plaintiff cannot recover, and the verdict must be for the defendant.' By adding these words: 'I charge you *that,* as I have already charged you, that is, if you find that it was so agreed. Of course if this writing here is *not* the agreement, it cannot bind the parties (policy).' The error assigned being that this agreement was contained in the contract put in evidence by the plaintiff upon which he brought his action.

22. "Because the presiding Judge erred in refusing to charge the following request of the defendant: 'Lastly, the jury is further instructed that they cannot consider the question of the waiver of the requirements of these clauses of the policy, because there is no evidence before them of any waiver of any of such requirements.' "

*Messrs. Mordecai & Gadsden, Rutledge & Hagood* and *Simeon Hyde,* for appellant. *Mr. Hyde* cites: *Parol evi-*

*dence is not admissible to vary written contract:* 50 S. E.,
132; *and evidence of waiver of iron safe clause was inad-
missible:* 46 S. E., 440; 45 S. E., 1003; 78 S. C., 73; 74
S. C., 246; 183 U. S., 388; 75 S. C., 261, 315; 36 S. C.,
213; 48 S. C., 195; 52 S. C., 223; 51 S. C., 180. *Parol
evidence is not admissible to prove value of loss:* 46 S. E.,
1021. *Iron safe clause is a warranty:* 41 S. E., 55; 51 S.
E., 812, 866; 63 N. Y., 108; 2 May on Ins., 465; 50 Md.,
180. *Burden of showing compliance is on insured:* 26 S.
E., 513; 32 S. E., 256; 4 Joyce on Ins. Par., 3790. *Party
is charged with knowledge of written contract:* 26 S. C., 91;
62 S. C., 1.

*Messrs. Glaze & Herbert* and *Wolfe & Berry,* contra.
*Messrs. Wolfe & Berry* cite: *As to kinds of agency and
authority of agents:* Ewell on Agency, 21; Joyce on Ins.,
sec. 395; 131 Ind., 68; 82 Va., 949; 43 Kans., 467; 49
Kans., 178; 43 N. J. L., 652; 2 S. Dak., 17; 43 Barb., 351;
23 Barb., 656; 61 Barb., 335; 56 Ill. App., 629; 50 Ohio,
558.

*Messrs. Glaze & Herbert* cite: *The agent had the author-
ity to waive the iron safe clause:* 22 Cyc., 1425; 11 Ency.,
331; 13 Wall., 220; 13 Fed., 74. *Company is bound by
act of its agent:* 11 Ency., 338; 45 S. C., 548; 70 S. C.,
303; 48 S. C., 223; 61 S. C., 328; 36 S. C., 273. *Company
is estopped from asserting a cause of forfeiture known at
inception of contract:* 52 S. C., 229; 74 S. C., 250; 75 S.
C., 263, 320; 187 U. S., 467; 87 Fed. R., 637; 82 Fed.,
986. *Insured has right to show waiver of forfeiture:*
52 S. C., 227; 55 S. C., 595; 43 S. C., 26; 42 S. C., 19;
70 S. C., 304. *Receipt of premium and delivery of policy
are acts of principal:* 11 Ency., 336-9; 52 S. C., 228; Rev.
Stat., 1893, 1481. *Defendant is estopped from claiming
forfeiture:* 70 S. C., 295; 36 S. C., 270; 112 U. S., 696;
55 S. C., 593; 70 S. C., 353; 29 S. C., 579.

The opinion in this case was filed November 13th, but held up on petition for a rehearing until

November 26, 1908.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.   It seems that H. L. Slawson, a citizen of Orangeburg county, was engaged in merchandising in the year 1906, and on the 18th of October of that year sought a policy of insurance upon his stock of goods, such stock consisting of dry goods, groceries, grain, etc.; he applied for such insurance to T. A. Ameker, in the town of St. Matthew's, S. C.   Mr. Ameker was the agent of the defendant, the Equitable Fire Insurance Company; the amount desired was $1,200.

The subject was discussed between the two; amongst other things the fact that said Slawson did not own an iron safe; here the parties differ, Slawson contending that he was informed that such fact would not prevent the issuing of the policy to him; the defendant claiming that Ameker made no such concession.   The result was a policy for $1,200 was issued to the plaintiff by the defendant; such policy was retained by Ameker, and on the same occasion a chattel mortgage was issued by the plaintiff to the Banks & Wimberly Company.   Subsequently, on the 7th day of January, 1907, the insured property was totally destroyed by fire, which fire also destroyed the books of the plaintiff, such as the usual books, invoice book, and cash and credit sales book; notice was given of this fire, and when Mr. Pinckney came to see the plaintiff he was carried to St. Matthew's to see Mr. Ameker, and the insurance policy was obtained from him (it should be stated right here that Mr. Ameker was a member of the firm of Banks & Wimberly Company).   The policy was delivered by Mr. Ameker on that occasion, and was delivered to Mr. Pinckney, but the question was asked by Mr. Pinckney as to where were the books of the plaintiff, as merchant; he was informed that

they had been totally destroyed by the fire, which burned the store and its contents, and that there was no iron safe in the building; the result was a denial of the right of the plaintiff to recover.

On the 6th day of April, 1907, this action was brought by H. L. Slawson, as plaintiff, against the Equitable Fire Insurance Company and Banks & Wimberly.

The complaint set up these allegations of fact, and the answer of the defendant admitted that it had issued the policy, and that Banks & Wimberly held a chattel mortgage for $271.83, but denied its liability to pay the plaintiff anything for the insurance which had been issued to the plaintiff.

The cause came on to be heard before Judge Klugh and a jury at the October term, 1907, of the Court of Common Pleas. After full hearing of testimony, and the charge of his Honor, the jury rendered a verdict in favor of the plaintiff for $1,200.

After judgment this appeal was taken upon twenty-one grounds, which we will now examine; the exceptions will be reported.

These exceptions will not be considered in their order, but will be grouped, as has been done by the appellant's attorneys in their argument.

Exceptions 1, 6, 14 and 22: There is no doubt but that the general rule is there cannot be an admission of evidence to change or modify by parol evidence any contract in writing; but still it is well admitted that such testimony often becomes necessary in cases when contracts are completed by the official act of an agent. Now, in the case at bar the policy of insurance was issued by the official signatures of the officers in charge of the same, but it was not to become operative until countersigned by the agent of the insurance company, Mr. T. A. Ameker; and the testimony was that before the signature of Mr. T. A. Ameker, as the agent, was made, the agreement was made

that, although the language in the policy required that an iron safe should be kept by the plaintiff, H. L. Slawson, and the rule relating to the invoices and other papers should be of force, yet both parties, through said agent, agreed that no such requirement should be held operative, and that contemporaneous with such agreement the thirty-nine ($39) dollars in cash was actually paid as the premium required of H. L. Slawson; such being the case, it would have operated as a fraud upon Slawson if the defendant insurance company had obtained and retained the premium so paid by Slawson; thus the defendant insurance company, through its own agent, not only received the premium for the policy, but assured the plaintiff here that his property would be made secure to the extent of twelve hundred ($1,200) dollars, which also directly assured the agent, through Banks & Wimberly, of protection from loss by fire in the property insured to the extent of $271.

This is no new doctrine, as will be seen by reference to *Gandy* v. *Insurance Co.*, 52 S. C., 229, 29 S. E., 905 ; *Pearlstine* v. *Insurance Co.*, 74 S. C., 250, 54 S. E., 558 ; *Doyle* v. *Hill*, 75 S. C., 263, 55 S. E., 446 ; *Fludd* v. *Insurance Co.*, 75 S. C., 320, 55 S. E., 762 ; *Hartford Fire Ins. Co.* v. *Wilson*, 187 U. S., 467 ; *Mutual L. Ins. Co.* v. *Logan*, 87 Fed., 637, and many other cases might be cited.   To hold otherwise would seem to foster the commission of palpable wrong.   These exceptions we, therefore, overrule.

Exceptions 2, 3, 4, 5, 7, 8, 9, 10, 11, 12 and 13 : The property having been destroyed by fire, and the papers, including the inventory, stock book and cash and credit book, having been also destroyed, it was necessary to resort to secondary evidence to show plaintiff's losses; very fortunately he was just engaged a day or so before the fire in making inventories of the personal property, amounting in the aggregate to $1,738, which was fully established by the testimony, and that there was also several hundred dollars worth of groceries and grain that was not.

included in the invoice list; to require the production of
books and papers showing in what these losses consisted
before the plaintiff could recover for his losses, would be
requiring an unheard of proposition after a fire has de-
stroyed the same.   While it is true that insurance compa-
nies guard against improper losses by the means just sug-
gested, yet that is not the primary object of the defendant's
engagement; the plaintiff sought protection against fire, and
by the means now suggested by the defendant the plaintiff
was virtually required to insure them; the agent of the
insurance company knew exactly what policy was pursued
by the plaintiff when his personal property was insured,
and there was, therefore, no imposition practiced by the
plaintiff upon the defendant insurance company.

All in all, it seems that the plaintiff was entitled to his
judgment against the insurance company, for witness after
witness testified that there was over $2,000 worth of prop-
erty there when the fire destroyed the building.   Let these
exceptions be overruled.

Exceptions 15, 16, 17, 18, 19, 20, and 21:   We
cannot see that the Judge committed any error when he
admitted testimony as is here pointed out.   He
rightly left it to the jury to say whether there was
an agreement as to the iron safe clause; they have
spoken in their verdict, and it is binding upon us.

The judgment of this Court is that the judgment of the
Circuit Court be affirmed.

MR. JUSTICE GARY *concurs in the result.*

MR. JUSTICE JONES.   This action is upon a fire insurance
policy for $1,200, issued by defendant to plaintiff, October
18, 1906, upon a stock of merchandise which was destroyed
by fire on January 7, 1907.   The main defense was for-
feiture of the policy by non-compliance with the iron safe
clause.   The plaintiff not only failed to keep the books and

inventories in an iron safe, but kept them in the store-room, exposed to the fire which destroyed them with the stock. The action resulted in a verdict and judgment for plaintiff for the amount claimed, and defendant appeals upon exceptions to rulings as to the admissibility of testimony and instructions to the jury.

We will notice the points made by which the appeal should be controlled. To avoid the iron safe clause the plaintiff sought to show: (1) That he did not know that such clause was in the policy. (2) That such clause was waived by defendant.

The evidence on part of plaintiff was to the effect that the policy was never actually delivered to him or seen by him until after the fire; that Mr. Thomas Ameker was agent of the defendant company, wrote the policy in question, and he was also connected with the defendant, the Banks & Wimberly Company; that the policy, by instructions of plaintiff and with defendant's consent, was made payable to the Banks & Wimberly Company, "as their interest may appear," because of the fact that they held a mortgage on the stock of merchandise; that plaintiff, about 28th October, 1906, asked Mr. Ameker for the policy, and he said he was busy then and could not find it; that plaintiff made no further attempt to see the policy, leaving it in the hands of Ameker until after the fire.

The complaint alleged issuance of the policy by defendant to plaintiff October 18, 1906, whereby defendant agreed to insure plaintiff's property "in accordance with the stipulations, schedules, forms, terms and conditions of the said insurance policy," which allegation was admitted by the answer. Furthermore, plaintiff introduced in evidence the policy, and it contained the iron safe clause in question. There was no allegation of fraud, misrepresentation or mistake in the statement of the terms of the policy. Under these circumstances plaintiff is conclusively presumed to know that the iron safe clause was a part

of the policy upon which he sought recovery. It was, there-fore, error to submit to the jury to determine whether such clause was a part of the policy in the absence of evidence tending to show waiver thereof by defendant at the incep-tion of the policy.

The Circuit Court refused to instruct the jury that they could not consider the question of waiver of the require-ments of these clauses of the policy because there was no evidence of such waiver, and we think this was error.

The only evidence relied on to show waiver is this: "Q. At the time that this insurance was taken out was there anything said about the iron safe? A. Yes, sir; Mr. Ameker asked me if I had one, and I told him I did not have one, and he said that would be all right."

If an insurance agent at the inception of the contract has knowledge of a fact constituting forfeiture, that knowledge is imputed to the company, and the issuance of the policy as a valid policy estops the company from asserting the forfeiture. *Gandy* v. *Ins. Co.*, 52 S. C., 228. But the mere fact that the defendant knew plaintiff had no iron safe at the issuance of the policy is entirely consistent with the iron safe clause. This clause does not make the policy forfeitable if the insured has no iron safe, for it distinctly provides that in case of failure to keep the books and inven-tories securely locked in a fire-proof safe at night, "the assured shall keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building." The insurance company, knowing that the insured had no safe at the time of the insurance, may, nevertheless, in perfect good faith, rely upon the stipulation, at least to the extent that if the insured did not thereafter procure an iron safe he would protect the books and inventories as other-wise stipulated in the policy. There is no inconsistency whatever between delivery of the policy, as a valid policy, with the iron safe clause in it, and knowledge of the fact

that the insured then possessed no iron safe, for such fact constituted no ground of forfeiture.

The cases of *Gandy* v. *Ins. Co.*, 52 S. C., 228, 29 S. E., 655; *Pearlstine* v. *Ins. Co.*, 74 S. C., 250, 54 S. E., 372; *Doyle* v. *Hill*, 75 S. C., 263, 55 S. E., 446; *Fludd* v. *Ass. Soc.*, 75 S. C., 320, 55 S. E., 762; *Reardon* v. *State Mut. Life Ins. Co.*, 79 S. C., 526, and kindred cases, rest upon the view that if upon the delivery of the policy the insurance company knew of an existing fact constituting ground of forfeiture, the insurance company is estopped to set up such fact against the policy, or is deemed to have waived forfeiture based upon such known fact. Two recent cases, *Hankerson* v. *Piedmont Ins. Co.*, 80 S. C., 392, and *Plunkett* v. *Piedmont Ins. Co.*, 80 S. C., 407, are referred to in *McCarty* v. *Piedmont Ins. Co.*, 81 S. C., 159, as being cases in which the knowledge of the agent, which constituted the basis of waiver or estoppel, was as to existing facts inconsistent with the delivery of the policy as a valid contract and as falling within the rule in Gandy's case.

The judgment of the Circuit Court should be reversed.

MR. JUSTICE WOODS *concurs*.

November 26, 1908. PER CURIAM. After careful consideration of the petition herein, the Court is satisfied that no material question of law or of fact has either been overlooked or disregarded.

It is, therefore, ordered that the petition be dismissed and that the order heretofore granted staying the remittitur be revoked.