10880

GRAHAM v. STANDARD FIRE INS. CO.

(112 S. E. 88)

1. INSURANCE—EVIDENCE OF KNOWLEDGE OF AGENTS THAT INSURED AUTOMOBILE WAS MORTGAGED AND USED IN PUBLIC SERVICE SUFFICIENT TO GO TO THE JURY.—In action on an automobile fire insurance policy defended on the ground that the car was mortgaged and used in public service, contrary to the policy, evidence of knowledge thereof by agents of the insurance company *held* sufficient to go to the jury.

NOTE: The question as to insurance against damage to automobile by fire is discussed in a note in 14 A. L. R. 199.

2.  INSURANCE—AGENCY ONCE PROVEN PRESUMABLY CONTINUES.—
    Where the agency of the company's local agent is proven, it is pre-
    sumed to have continued, in the absence of proof of change.

3.  INSURANCE—POLICY ON AUTOMOBILE NOT IN PUBLIC SERVICE WHEN
    DESTROYED WAS NOT FORFEITED BECAUSE AUTOMOBILE HAD BEEN IN
    PUBLIC SERVICE.—Under automobile fire insurance policy providing
    that the automobile must not be used in public service, if the auto-
    mobile was not in public service when destroyed, the policy was not
    forfeited because it had been in public service.

4.  TRIAL—INSTRUCTION HELD NOT ERRONEOUS AS BEING ON FACTS;
    "WHERE."—In an action on an automobile fire policy, an instruction,
    "Where they (insurers) knew the plaintiff was using his car in a
    manner not permitted by the terms of the policy, it wouldn't do
    for them to keep quiet, say nothing, keep the plaintiff's money, and
    not let him know they would forfeit his policy," was not erroneous
    as being a charge on the facts, since the word "where" is used in
    the sense of "if," meaning in case the insurers knew, etc.

5.  TRIAL—INSTRUCTION HELD NOT ERRONEOUS AS BEING ON FACTS.—
    In an action on an automobile fire policy, an instruction as to the
    knowledge of the insurers or their agent that the automobile was
    used in public service contrary to the policy: "Did the company
    know it, or did its agent know it? Knowledge of the agent is knowl-
    edge of the company. If you are satisfied it did, make the com-
    pany pay. And if you are satisfied that the public service busi-
    ness had nothing to do with causing the loss, why let the company
    pay"—was not erroneous as being a charge on the facts.

Before PRINCE, J., Anderson. June, 1921. Affirmed.

Action by A. K. Graham against Standard Fire Insurance
Co. From judgment for plaintiff defendant appeals.

*Messrs. Bonham & Allen,* for appellant, cite: *Waiver*:
27 R. C. L. 908; 54 S. C. 37.

*Messrs. Greene & Earle,* for respondent, cite: *What may
be taken as evidence of intention to waive forfeiture*: 57
S. C. 358; 70 S. C. 295; 97 S. C. 375; 102 S. C. 115; 104
S. C. 403; 54 S. C. 509. *Agent may waive provisions of
policy*: 80 S. C. 395; 97 S. C. 375; 1 Civ. Code 1912, Sec.
2712. *Violation of provision of policy, if not responsible
for loss is not ground for forfeiture*: 76 S. C. 76. *No for-
feiture for violation of which agent has knowledge where*

*no return of premium was offered* : 97 S. C. 375; 102 S. C. 315; 74 S. C. 246.

April 26, 1922.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action on a policy insuring an automobile. The automobile was burned, and the company refused to pay. The evidence, or so much as is proper, will be given under the decision of the various assignments of error. The judgment was for the plaintiff.

I. There was a motion made for a directed verdict; this was refused. His Honor could not have directed a verdict. There were three provisions in the policy for forfeiture:

(a) The insured must be sole and unconditional owner.

(b) The property insured must not be under mortgage.

(c) The property insured must not be used in public service.

There was evidence undisputed that there was a mortgage on the machine, but there was also evidence that the agent of the defendant knew it was under mortgage. The car had been used as a public service car, but had been withdrawn from public service before the fire. There was evidence from which the jury might have inferred that the person who wrote the policy for the defendant knew this fact also—that the car was bought to be used in public service before the policy was issued. See *Gandy v. Ins. Co.,* 52 S. C. 224, 29 S. E. 655. The defendant claimed that the policy was void ab initio, and although the premium had been paid, yet the record does not show any offer to return the premium. There was also evidence that Mr. Johnson, who wrote the policy, gave the plaintiff proofs of loss and told him to make them out and the claim would be paid.

It is true that the adjuster told the plaintiff that the company denied obligation, and it would do no good to put in a proof of loss, and this the plaintiff admitted, but said the local agent told him to put in the proof of loss, and it would be paid. The appellant claims that agency had been revoked, and the plaintiff did not show that the local agent was agent at the time. This overlooks the fact that the local agent was agent at the time the policy was issued, and, the relation once having been proven, it is presumed to have continued until there is proof of a change. The defendant's witness said he did not know when the relationship had ended. A verdict could not have been directed.

II. The second assignment of error is that his Honor charged the jury that the provision as to public service has no application if they believed that the car was not in public service at the time of the loss. The appellant in argument assigns reasons for the forfeiture, stating that a car on account of accumulation of oil in the machinery would be more liable to burn. If the policy had excluded cars that had been used in public service, then the point would be well taken. The forfeiture is manifestly for the increased perils incident to public service. The provision as to chattel mortgages clearly refers to the perils of an intentional burning, while covered by a chattel mortgage. This assignment of error cannot be sustained.

III. *As to sole and unconditional ownership*: The record does not show that the chattel mortgage was due. The policy was taken out only a day or two after the purchase, and, if it was due, the record should have shown it.

IV. The next assignments of error are that his Honor charged on the facts when he said:

(a) "Where they knew the plaintiff was using his car in a manner not permitted by the terms of the policy, it wouldn't do for them to keep quiet, say nothing, keep the

plaintiff's money, and not let him know they would forfeit his policy."

This is not a charge on the facts. The word "where" is used in the sense of "if." That is, where they know, or in a case where they know.

(b) Again: "Did the company know it, or did its agents know it? Knowledge of the agent is knowledge of the company. If you are satisfied it did, make the company pay. And if you are satisfied that the public service business had nothing to do with causing the loss, why let the company pay." This is also said to be a charge of facts. This is not a charge on the facts, and the judgment is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN (dissenting): Action upon a fire insurance policy issued April 26, 1920, for $1,000, upon an automobile, destroyed by fire, January 18, 1921, during the term covered by the policy. The insurance company denied liability upon the ground that the policy had been forfeited for three reasons: (1) That the insured was not the sole and unconditional owner of the car; (2) that the car was subject to the lien of a chattel mortgage given by the insured; (3) that "during the term of the policy" the insured had used the car in public service. All three of these grounds are admitted by the insured to have existed; the policy shows that each is made a ground of forfeiture.

The insured seeks to avoid forfeiture on the ground of knowledge on the part of the agent of the company of the facts claimed by the company to constitute a forfeiture, and a consequent waiver thereof by the company; and also upon the ground that the company had not returned the unearned premium.

*As to sole and unconditional ownership*: I do not understand that there is any claim by the company that the insured

was not the sole and unconditional owner of the car, except in so far as his title was affected by the chattel mortgage placed upon it by him.

It seems to be assumed in the leading opinion that, notwithstanding the execution of the mortgage, the mortgagor retained the legal title to the car until default occurred in the payment of the obligation secured by the mortgage. The expression is quite common, that upon breach of the condition of a chattel mortgage (that is upon nonpayment of the debt at maturity), the title to the mortgaged property vest in the mortgagee. This is an inaccurate statement of the law. At common law the title to mortgaged property, real or personal, vested in the mortgagee immediately upon the execution of the mortgage the right of possession remaining in the mortgagor until condition broken. By the Act of 1797 (Section 3460, Vol. 1, Code of Laws, A. D. 1912) this rule was abrogated so far as *real estate* mortgages were concerned, the Act declaring that as to them the mortgagor shall be deemed still the owner of the legal title and the mortgagee the owner of the debt collectible by foreclosure. There is no similiar statute in reference to chattel mortgages, and therefore the common-law rule as to them remains undisturbed. Immediately upon the execution of a chattel mortgage the title vests in the mortgagee, the right to possession remaining in the mortgagor until condition broken. Upon breach of the condition the mortgagee, already having the legal title, unites with it the right to possession. A more accurate expression of the law, therefore, is that upon breach of condition the *right of possession* (not the *title* which had therefore vested) vests in the mortgagee.

There can therefore be no question but that at the time the policy was issued the insured was not the sole and unconditional owner of the property; and that that fact, prima facie, constituted a forfeiture under the terms of the policy.

The evidence claimed by the insured as tending to show a waiver of this ground of forfeiture is as follows: The plaintiff testifies that at the time the insurance was written the insurance agent asked him if there were any papers upon it; that he told him that he had bought the car from Shelor, paid him $500 on it, and was to pay $50 per month until it was paid for; that he had given a mortgage to Shelor to secure the unpaid portion of the purchase money. This was ample testimony to require the submission of the issue of waiver to the jury, and certainly as to this ground of forfeiture the defendant was not entitled to a directed verdict.

*As to the existence of a chattel mortgage upon the car*: The plaintiff testifies that he bought the car from George Shelor, on April 26, 1920, and gave him a mortgage upon the car to secure the purchase price; that the mortgage has not been satisfied. The policy was issued on the same day, necessarily after the trade had been consumated. The fire occurred on January 18, 1921. It is a settled fact, therefore, that the property insured was at the time of the fire incumbered with a mortgage, and that that fact, prima facie, constituted a forfeiture under the terms of the policy. The evidence referred to under the preceding subdivision applies equally and with like effect to this ground. Certainly as to it, the defendant was not entitled to a dircted verdict.

*As to the use of the car in public service*: The plaintiff testifies that he took out a public service license, and commenced using the car in such service, in October, 1920; that he used it *continuously* up to Christmas; that he took out a new public service license for the car for the year 1921; his memory fails him as to whether or not he used it in public service between Christmas and the date of the fire, January 18, 1921. It is admitted, therefore, that the insured violated his express warranty that he would not use the car in public service "during the term of this policy."

The plaintiff takes two positions in reference to this ground of forfeiture: (1) That the agent of the company was aware of the fact that he was engaged in public service, *after the policy was issued,* and that that constituted a waiver of the forfeiture; (2) that the car was not destroyed by fire while the plaintiff was engaged in public service; and that therefore the warranty had no application.

The evidence claimed by the insured as tending to show a waiver of this ground of forfeiture, by reason of the knowledge on the part of the agent, is exceedingly scant. The plaintiff testifies that he was accustomed to park his car in the space limited to public service cars, and that his car had a public service sign on the wind shield; that the agent was accustomed to pass along the street and speak to him while thus located waiting for passengers:

"The only notice I ever gave to Citizens' Insurance Agency that I was running this car for public service is just such as Ernest Johnson (the agent) may have obtained from passing up and down the street and seeing me sitting there."

Assuming that this notice, if given at the time the policy was issued, would be sufficient to carry the question of waiver to the jury, the question is presented whether or not, having been given and the fire having occurred after that time, it can be so considered.

The distinction between the fact of having notice of the invalidating circumstances at the time the contract is entered into, and receiving notice thereafter of facts constituting a breach of condition subsequent, must readily be perceived. In the one case, it is presumed that the parties intended to consummate a valid contract, which presumption would be destroyed if one of the parties, receiving the money of the other party with full knowledge of all the circumstances, should be allowed to repudiate the contract. He would be estopped by his conduct from insisting upon

the invalidating fact. In the other, the parties have consummated a valid contract, which, under their convention, may be annuled by the omission or commission of a certain act. To hold that notice of such omission or commission is a waiver of the condition entailing a forfeiture by reason thereof is to absolutely destroy the condition. The distinction is observed in the text-books and in a dozen of cases decided by this Court: ·

"It is usually held that where the insurer, *at the time of the issuance of a policy* of insurance, has knowledge of existing facts, which if insisted on, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped from thereafter asserting the breach of such conditions." 14 R. C. L. 1166.

"The knowledge by an insurer of a breach of a promissory warranty forfeiting a policy does not amount to a waiver. There must exist, in addition, some positive act of confirmation upon which, in connection with the knowledge, a waiver may be predicated, and by force of which the broken contract may be said to be revived." 14 R. C. L. 1167; *Carpenter v. Insurance Co.,* 16 Pet. 495, 10 L. Ed. 1044; *Insurance Co. v. Thomas,* 82 Fed. 406, 27 C. C. A. 42, 47 L. R. A. 450; Id., 92 Fed. 127, 34 C. C. A. 240, 47 L. R. A. 450; *Foreman v. Insurance Co.,* 104 Va. 694, 52 S. E. 337, 3 L. R. A. (N. S.) 444, 113 Am. St. Rep. 1071.

"Nor is there any waiver where the agent only has authority to take applications and deliver them, and the knowledge of the facts constituting a breach comes to him after the contract is completed; and notice to the soliciting agent that the applicant keeps gunpowder in the insured premises is held not to be notice to the company, * * * and the company is not chargeable with notice acquired by the soliciting agent subsequently to the delivery of the policy for the reason that his functions are held to have

ceased." 2 Joyce Ins. (2d. Ed.) p. 1326; *Ins. Co. v. Texarkana Co.,* (Tex.) 15 S. W. 34; *Ins. Co. v. Van Os,* 63 Miss. 431, 56 Am. Rep. 810; *Crane v. Ins. Co.,* (C. C.) 3 Fed. 558; *Heath v. Ins. Co.,* 58 N. H. 414; *Putnam Co. v. Ins.. Co.,* 145 Mass. 265, 13 N. E. 902.

"The insurer is also estopped from asserting the invalidity of its policy at the time it was issued for the violation of any of the conditions of such policy, *if at any time it was issued* the fact of such violation was known to the company or to its duly authorized agent." 2 Joyce, Ins. (2d Ed.) § 536.

"Notice to a soliciting agent, after a fire insurance policy has been issued, is not notice to the company." 2 Joyce, Ins. (2d Ed.) § 515b; *Ins. Co. v. Kennedy,* 161 Ala. 600, 50 South. 73, 135 Am. St. Rep. 160; *Lewis v. Ins. Co.,* 181 N. Y. 392, 74 N. E. 224, 106 Am. St. Rep. 557.

"If the change in title or interest occurs after the policy is issued, and no duty devolves upon the agent to take any action in the matter except upon assured's request, said agent's knowledge of all the facts in relation to an administrator's sale and its confirmation, to which he makes no objection but allows the policy to stand, does not estop assurer to take advantage of said change in the interest or title." 2 Joyce, Ins. (2d. Ed.) § 561; *Moller v. Ins. Co.,* 54 Wash. 439, 103 Pac. 449, 24 L. R. A. (N. S.) 809, 132 Am. St. Rep. 1115.

"There was strong testimony going to show that the defendant knew *when it issued this policy* of insurance all the facts relating to the ownership," etc. *Graham v. Ins. Co.,* 48 S. C. 195, 26 S. E. 323, 59 Am. St. Rep. 707.

"The plaintiff offered to introduce testimony for the purpose of showing that, *at that time,* the agent of the defendant had knowledge that there was other insurance on the property. *Such knowledge* would prevent the company from setting up, as a defense, that there was other in-

surance." *Schroeder v. Ins. Co.,* 51 S. C. 180, 28 S. E. 371

"The receipt of the premium and the delivery of the policy were the acts of the principle, and, if the testimony of plaintiff is true, the principle, through its agent, had knowledge of the concurrent insurance *at the time of the inception of the contract of insurance.* Under *such circumstances,* it would be a fraud on the insured for the insurer to assert a forfeiture, which, by such acts, it declared it would not assert." *Gandy v. Ins. Co.,* 52 S. C. 224, 29 S. E. 655.

"When the insured *at the time of making application* showed to an agent of insurer an inventory of the stock of goods and agent says, 'It is all right,' the insurer thereby waives its right to afterwards insist that such inventory does not conform to the iron safe clause." *Madden v. Ins. Co., 70* S. C. 295, 49 S. E. 855.

"An insurance company, affected with knowledge of its agent and thus knowing the existence of a cause of forfeiture *at the inception of the contract,* is estopped to assert such forfeiture by accepting the premium and delivering the policy as a valid contract of insurance." *Doyle v. Hill,* 75 S. C. 261, 55 S. E. 446.

"If an insurance company, *at the inception of the contract of insurance,* has knowledge of facts which render the policy void at its option, and the company delivers the policy as a valid policy, it is estopped to assert such ground of forfeiture." *Fludd v. Ins. Co.,* 75 S. C. 315, 55 S. E. 762.

"Knowledge by the agent at the inception of the insurance contract that the books could not be kept in an iron safe on the premises, would estop the insurance company from claiming a forfeiture." *Cobb & Seal v. Ins. Co.,* 78 S. C. 388, 58 S. E. 1099.

In *Rearden v. Ins. Co.,* 79 S. C. 526, 60 S. E. 1106, it is held that any information a soliciting agent may have, *before application,* of the condition of health of an appli-

cant, obtained while soliciting insurance, is notice to the company.

"It has frequently been held in this State that if an insurance agent *at the inception of the contract* has knowledge of a fact constituting a forfeiture, such knowledge is imputed to the company, and the issuance of the policy as a valid policy estops the company from asserting the forfeiture." *McCarty v. Ins. Co.,* 81 S. C. 152, 62 S. E. 1, 18 L. R. A. (N. S.) 729.

"If an insurance agent, at the inception of the contract, has knowledge of a fact constituting forfeiture, that knowledge is imputed to the company, and the issuance of the policy as a valid policy estops the company from asserting the forfeiture." Jones and Woods, JJ. *Slawson v. Ins. Co.,* 82 S. C. 51, 62 S. E. 782.

"A statement to the policy holder by an agent of the insurer, *made at the time of the issuance of the policy* and receipt of the premium, to the effect that a condition of the policy will not be insisted on, is evidence of waiver or estoppel." *Berry v. Ins. Co.,* 83 S. C. 13, 64 S. E. 859.

To the same effect are: *Hollings v. Bankers' Union,* 63 S. C. 192, 41 S. E. 90; *Hankinson v. Ins. Co.,* 79 S. C. 392, 61 S. E. 905; *McCarty v. Ins. Co.,* 81 S. C. 152, 62 S. E. 1; *Huestess v. Ins. Co.,* 88 S. C. 31, 70 S. E. 403.

In *Cassimus v. Ins. Co.,* 135 Ala. 256, 33 South. 163, it is held that where the policy forbids the keeping of certain inflammable commodities ·on hand, and *after the policy has been issued,* the agent has knowledge of the breach of such condition, notice to him does not bind the company, or operate as a waiver of the insurer's right to avoid the policy for keeping such prohibited articles.

In *Garretson v. Ins. Co.,* 81 Iowa, 727, 45 N. W. 1047, it is held that an agent, authorized only to solicit insurance, deliver policies, and receive premiums, who after the issuance ·of the policy consents that the insured may keep gasoline,

in violation of the policy, does not thereby bind the company.

To the same effect is *Bartholomew v. Ins. Co.,* 25 Iowa, 507, 96 Am. Dec. 65, in reference to gunpowder.

In *Stevens v. Queen Ins. Co.,* 81 Wis. 335, 51 N. W. 555, 29 Am. St. Rep. 905, it is held that, where the policy contains a condition against mortgages, and after it is issued the agent assists in the preparation and execution of a mortgage by the insured, the knowledge of the agent is not to be imputed to the company as a ground of waiver.

The same principle is applied to cases of vacancy occurring within the knowledge of the agent after the policy has been issued. *Ins. Co. v. Garland,* 108 Ill. 220.

In *Moller v. Ins. Co.,* 54 Wash. 439, 103 Pac. 449, 24 L. R. A. (N. S.) 807, 132 Am. St. Rep. 1115, it is held, quoting from the syllabus:

"Knowledge on the part of the agent of an insurance company, after a policy has been issued, of a change in the title of the insured sufficient to work a forfeiture of the policy, will not estop the insurer from taking advantage of it, since he was under no duty to take any action by reason thereof unless requested to do so by the assured."

The rule adopted by the Supreme Court of the United States is that it is not admissible to show by parol evidence that a condition stated in a policy as essential to its validity was known by the local agent not to exist at the time the policy was issued, where the policy provides against waiver. *Assurance Co. v. Association,* 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213.

"But" (as declared by this Court in *Pearlstine v. Ins. Co.,* 74 S. C. 246, 54 S. E. 372) "the rule adopted in this State and the large majority of the States of the Union is that an Insurance Company cannot avail itself of provisions in the policy that it should be void if certain facts therein mentioned as essential to the insurance should be found not to

exist when these facts were known to an agent not to exist *when the policy was issued* through him, and the existence of such facts (nonexistence?) and the knowledge of the agent may be proved by parol."

I do not agree that this Court should further extend the rule, admittedly out of harmony with the supreme tribunal, to instances of notice to the agent after the issuance of the policy; a principle which has not heretofore, within my knowledge, been enunciated by this or any other Court.

There was no evidence in the case tending to show knowledge on the part of the company of the alleged improper use of the car, other than what may have been imputed to the company by reason of the knowledge of the agent. In view of the undisputed fact that the improper use did not begin until some months after the policy was issued, the knowledge of the agent could not have been acquired "at the inception of the contract;" and of the further fact that the knowledge of the agent was acquired as an individual, and not in the course of his agency, I think it was error to submit this issue at all to the jury.

"If an agent has merely authority to take applications and deliver them, and his knowledge of a breach of warranty comes to him in his individual capacity, after the contract of insurance is made, there is no waiver of forfeiture." 2 Joyce, Ins. (2d Ed.) § 546.

"It is necessary that the knowledge of an agent, in order to bind the company, should have been obtained by him in the course of his employment. If obtained while doing an act in no way connected with his agency, the company is not bound." 2 Joyce, Ins. (2d Ed.) § 544.

The further contention of the plaintiff, as indicated above, in avoidance of the forfeiture under consideration, is that as the car was not in public service at the time of the fire, this condition of the policy has no application.

I do not comprehend this position can be maintained by the plaintiff, or sustained as it is in the leading opinion, in view of the specific conditions of the policy:

"It is warranted by the assured that the automobile hereby insured, *during the term of this policy,* shall not be used for carrying passengers for compensation."

That it was so used is admitted, and for nearly three months, up to Christmas, 1920; and that a new license to operate this very car as a public service car during the year 1921 was taken out by the plaintiff; though the plaintiff claims that prior to the fire he transferred his license to another, and was not operating it as a public service car at the time of the fire.

The effort is to read into the policy something that is not there, and to read out of it something that is. The policy does not provide for a forfeiture in the event that the car be in use as a public service car *at the .time of the fire;* but that at *no time during the term* of the policy shall it be so used.

The plaintiff was under no compulsion to take out a policy upon the car; the company was alike free to issue or not issue it; if issued it was a matter of convention between the plaintiff and the defendant; and if parties agree upon the terms of their convention I do not apprehend that the Court has the power to change them.

An insurance company is a business organization, not an eleemosynary institution. Its prospects of financial success are based upon moral and physical hazards; and the rates of insurance are or should be reduced in proportion to the elimination of certain well-recognized hazards of both kinds.

The limitation of the use of an automobile to private operation is a distinct benefit to the insurer. It ensures less wear and tear, better attention and protection, and consequent longer life; it does not expose it to the rough

usage and deterioration of a "speed fiend" or a "night hawk;" and consequently the moral risk of commercializing upon a derelict is practically annihilated.

For the same reason (the elimination of the moral risk), a policy upon mortgaged property is not desirable.

In the case of an automobile, put to public service, both the moral and the physical risk are increased. Aside from the suggested increased risk of fire, due to accumulation of inflammable "barnacles" upon this modern ship of the road, the salvage value is greatly decreased in case of fire, an assignment of which the company would be entitled to, upon payment of loss.

An interesting question has arisen, which has been the subject of great judicial contention, as to the effect of an increased hazard, during the term of insurance, which has completely vanished before the fire, and has no casual connection with the fire.

As pointed out by Mr. Justice Woods in the case of *Sumter Warehouse Co. v. Assurance Co.,* 76 S. C. 76, 56 S. E. 654, 10 L. R. A. (N. S.) 736, 121 Am. St. Rep. 941, 11 Ann. Cas. 780, the authorities are in hopeless conflict. Some Courts of high authority hold the policy to be completely avoided by such temporary increase of hazard. Others hold to the view adopted by the Court in the case just cited, which entirely commends itself to my sense of reason and justice, that although there may have been action on the part of the insured resulting in an increased hazard, in violation of the terms of the policy if it should appear that such increased hazard was temporary in its nature, it has completely vanished before the fire, and has no casual connection whatever with the fire, while the liability of the company would have been suspended during the existence of the increased hazard, it is revived upon removal of the hazard.

In that case the policy provided for a forfeiture in the event of a change in the possession, or an increase in the hazard. The evidence showed that the owner had rented the building to a tenant, who occupied it and used it in his business of renovating and manufacturing mattresses, in connection with which he operated a steam engine, a business more hazardous than that mentioned in the policy; that the tenant occupied the building and conducted his business only two or three days, when, finding it unsuitable, he moved out before the fire.

This case presents a simple and clear illustration of an increased hazard, strictly temporary in its nature and effect, which had completely disappeared at the time of the fire, and which, of course, could not possibly have had any causal connection with the fire.

The conclusion of the Court that the increased hazard had only the effect of suspending the policy during its existence, which was revived upon its cessation, is based upon the very logical ground that, while the company had the right to cancel the policy upon information of the increased hazard—"it is not reasonable, to impute to it a purpose or desire to curtail its own revenue, by canceling a policy on account of the temporary increase of hazard, which has come to an end without loss, and from which it could not possibly suffer detriment."

In other words, if the company had not been informed of the increased hazard until it had completely been removed, there would have been no reason for, and every motive of self-interest against, its then canceling the policy.

It seems to me that in the case at bar a materially different situation is presented. In the first place the hazard could not be considered a temporary one. The plaintiff, during the term of the policy, made every arrangement to enter this car in public service; he took out a license specifically naming this car; he went regularly into the business,

and continued in it from October to Christmas; he took out a new license for this car *for the year* 1921.

In the second place, conceding that the increased hazard was only temporary, it is impossible that its effects upon the car could have been dissipated by the cessation of public service. The car had been "continuously" in operation for nearly three months, in the hardest conceivable service, and its value, the basis of the insurance and the hope of salvage, greatly diminished.

In the third place it cannot be asserted as a matter of law that the increased hazard had no causal connection with the fire. It is more reasonable to think that the rough usage, worn parts, accumulation of gasoline and oil and dilapidation increased its combustibility.

Tested by the common-sense rule adopted in the Sumter case it cannot be reasonable to assume that the company, having insured as perishable an article as an automobile, to be used as a private vehicle, at a rate based upon this use, would, for the sake of the unearned premium between Christmas and April, have continued the policy, after ascertaining that the car had been used for three months as a public service car, and had been re-entered as such for 1921. That could only be reasonable upon the assumption that the increased hazard had entirely vanished, leaving no scars, and that the object of insurance was in the same condition after as before, an hypothesis which the facts of this case do not support.

In *Commercial Co. v. Hill* (Tex. Civ. App.) 167 S. W. 1095, under a similiar policy the company claimed a forfeiture upon the ground that the owner's son had on two or three occasions used the car for carrying passengers for hire, without the knowledge of the owner. The Court held that the condition only applied where the car was continuously used for that purpose for any length of time; "in other words, the owner should not make a business of using

said automobile for carrying passengers for hire." This is exactly what the plaintiff in the case at bar admits he did.

In *Ins. Co., v. Van Zant,* 50 Okl. 558, 151 Pac. 323, it is held that a similiar provision in a policy "constitutes a promissory warranty, and a breach thereof by the insured prevents recovery." See, also, *Elder v. Ins. Co.,* 213 Mass. 389, 100 N. E. 655, where a similiar ruling was made.

It seems to me, therefore, that the defendant's motion for a directed verdict upon this ground of forfeiture should have been granted: First, because the alleged notice of the agent came to him *after* the contract was entered into; second, because the alleged notice came to him as an individual and not while in the business of his agency; third, because the admitted ground of forfeiture was not a temporary increased hazard within the reasoning of the Sumter case; fourth, because there is no evidence tending to show a waiver by the company of the forfeiture.

The plaintiff also contends that the company has waived the forfeiture by not returning the premium which had been paid, not simply the unearned portion of it, and the Circuit Judge so charged the jury. As far as the Court has gone in this matter is to hold that such failure is evidence to be submitted to the jury upon the issue of waiver. I think that that is as far as the Circuit Judge is authorized to go in any case, and in this particular case that he was not authorized to go even that far.

The rule referred to, in my opinion, is limited to instances where the company claims that by reason of some condition or representation at the time the policy was issued the policy is void ab initio; that it is not applicable to a forfeiture resulting from a voluntary breach of a promissory warranty. I do not perceive upon what principle an insured who commits such an act is entitled to a return of any part of his money; and, if not, the company was under no obligation to return it, and has waived no rights by retaining

what was its own.    Upon this point I adopt the very clear statement made by Chief Justice McIver, dissenting in *Schroeder v. Ins. Co.*, 51 S. C. 180, 28 S. E. 371:

"While, therefore, it may be true that if the policy was void in its inception, the company would be precluded from taking advantage of the failure of the condition which rendered the policy void in its inception without returning or offering to return the premium received by the company; yet the same would not be true where a policy, valid in its inception, has been rendered void by some act or omission of the assured after receiving such policy; for in this case I am unable to perceive any reason why the company should be required to refund the premium.    In such case the assured gets what he bargained for in consideration of the premium, viz., a valid policy for which he pays; and if the assured by his own act renders the policy valueless, there is no reason why the premium should be refunded."

"The policy * * * was not in force when the automobile was damaged by fire, and the plaintiff cannot recover for the loss.    Nor is he entitled to a return of any part of the premium.    The policy attached, and while the premium covered the life of the policy if its terms were complied with by the insured, the plaintiff could not through his voluntary breach deprive the defendant, who is without fault, of the full benefit of the contract." *Elder v. Ins. Co.*, 213 Mass. 389, 100 N. E. 655.