[No. 3524.   Decided May 27, 1901.]

CORA E. NIXON, *Respondent, v.* TRAVELLERS' INSURANCE COMPANY, *of Hartford, Connecticut, Appellant.*

INSURANCE — CONDITIONS OF POLICY — PAYMENT OF PREMIUMS — WAIVER BY AGENT.

A policy of insurance upon the life of plaintiff's husband was issued by defendant; the premiums thereon were payable to the general agents of the defendant located in the city of

the insured's residence, upon receipts countersigned by them, which had printed thereon in bold-faced type the words, "The agent has no authority to waive or postpone payments of premiums, or to countersign any receipt, unless the premium is actually paid in cash." Upon several occasions the agents, without knowledge of their principal, had accepted the insured's checks and deferred presenting them for a short period, at his request, but upon one occasion, when the premium was not paid when due, they had required him to make application directly to the company for reinstatement. Held, that the agreement of the agents to extend the time of payment of a premium due was not binding upon the defendant.

SAME — FORFEITURE.

The fact that a policy of insurance contained no provision for forfeiture for non-payment of any installment of premium, but only such a provision for forfeiture upon non-payment of the full annual premium, was immaterial, where the policy gave the insured the option to pay premiums either annually or in quarterly installments, and the insured chose the latter method, thus making it a part of his contract.

Appeal from Superior Court, Pierce County.—Hon. JAMES A. WILLIAMSON, Judge. Reversed.

*Frank P. Lewis,* for appellant.

*Stanton Warburton, Bates & Murray,* and *Sullivan & Christian,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—This is an action upon a policy of insurance issued upon the life of Thomas L. Nixon. The testimony most favorable to the contention of the respondent was substantially as follows: In December, 1887, Nixon, the husband of the respondent, made application to the appellant, through its agent, one Walter J. Ball, for a straight life policy. The application was upon a printed form used by the company, and contained, after the usual numerous questions, a certificate, signed by the applicant, reciting that the application should be made a part of the insurance contract applied for, and "that no agent of the

company shall have any power to waive or modify any of the conditions of the insurance contract." On January 3, 1888, a policy was issued to the applicant for the sum of five thousand dollars payable to the respondent. The policy, as issued, in terms made the application a part of the contract, and called for an annual premium payable on or before the 3d day of January of each year, but provided that the assured might, with the consent of the company, pay the premium in quarterly installments. The policy contained, among others, the following clause:

"All premiums are payable at the Home Office in Hartford, Conn., but will be accepted if paid to an agent in exchange for a receipt signed by its president or secretary, and countersigned by the agent designated thereon. This policy shall not take effect unless the first premium is paid while the *insured* is in good health; and if the second or third annual premium be not fully paid when due, this policy and all claims under it shall be void and the premiums already paid shall be forfeited to this company."

The assured elected to pay the premiums quarterly, and did pay them down to and including the quarterly payment falling due April 3, 1890. The assured resided from the time of the date of the policy until his death at Tacoma, Washington. This place was also the place of residence of Delprat & Ball, a partnership composed of George R. Delprat and the Walter J. Ball above named. The members of the firm were the resident agents of the company at Tacoma, and its sole representatives at that place. They had power and authority to solicit insurance for the company, collect premiums upon policies issued, and countersign receipts for premiums collected. Their signature was necessary, according to the recitals on the face of the receipts issued to the assured for the payment of premiums, to the validity of such receipts; and it was shown that the agents had on one or two occasions taken the assured's

check on a local bank in payment of a premium due, and at his request deferred presenting it for payment for a short period of time. But it was shown that, on a previous occasion, when the premium was not paid when due, they had required him to make application directly to the company for reinstatement. It was also shown that each receipt issued had printed upon it in bold-faced type the clause, "The agent has no authority to waive or postpone payments of premiums, or to countersign any receipt, unless the premium is actually paid in cash." Prior to the time the premium of July 3, 1890, became due, the assured left his home, leaving his business in charge of his brother-in-law, one George G. Matthews. At or just before the payment fell due, Ball called upon Matthews, and inquired when the assured would return, calling his attention to the fact that the premiums upon the policy sued upon and certain other policies were about to become due. Matthews told him that he expected the assured to return almost any day, but that, if it was necessary, in order to prevent the policies from lapsing, to pay the premiums, he would pay them himself, without waiting the assured's return. To this Ball answered that it was not necessary for him to do so; that the assured was a good friend of his, and that he would not allow the policies to lapse, but would protect them. Shortly thereafter a subsequent conversation was had between them practically to the same effect. About two weeks after this, Matthews met Ball upon the street, and handed him a telegram received from the assured, wherein it was stated that the assured would return the next day. At that time Ball stated that the "policies were all right, and that he would arrange with Mr. Nixon on his return." On the return of the assured he applied to Ball to pay the premium, and was informed that it would be necessary for him to get a health certifi-

cate, and apply directly to the company for reinstatement. It appears that the assured was in a bad state of health at the time, that his health did not subsequently improve, and that he died in the following April. Due proof of his death was made to the company, and payment of the insurance demanded. The company refused to pay, on the ground that the policy had lapsed because of the failure to pay the quarterly premium falling due on July 3d. The appellant, at the conclusion of the respondent's case, moved for a nonsuit, on the ground, among others, that the evidence was insufficient to make a *prima facie* case for the jury. The motion was overruled, and the case submitted to the jury, which returned a verdict for the respondent. From the judgment entered thereon this appeal is taken.

The motion for nonsuit should have been granted. The rule is fundamental that a principal is bound by the acts of his agent only when the agent acts within the scope of the authority conferred upon him, or where he acts within the apparent scope of his authority and the person dealing with him as such has no knowledge that his authority is less than his principal has made it appear to be. Here it cannot be disputed that the assured had knowledge of the want of authority on the part of the agents with whom he was dealing to extend the time of the payment of the premiums. Not only was it stated in his contract that they had no such power, but the successive receipts issued to him expressly warned him that no agent had authority to waive or postpone such payments. More than this, these very agents, when the assured had lapsed in a former payment, expressly refused to assume the exercise of the power to waive a forfeiture of the contract, but required him to apply to the company direct for reinstatement. Unless it is to be held that the company can-

not appoint an agent for the transaction of a particular part of its business without conferring upon the agent all the powers possessed by the corporation with relation thereto, it cannot be held that these agents had power to waive the express stipulation in this contract to the effect that failure to pay a premium when due rendered the contract void. The authorities cited by the respondent do not go to this extent. ·The waivers there held sufficient to keep the contract alive were either made by the corporation itself,—that is, by the board or person empowered by the corporate charter to exercise the functions of the corporation,—or by a duly authorized agent acting within the apparent scope of his power, and the person dealing with him had no knowledge of any limitation imposed thereon. To the latter class belong the decisions cited from this court. *Henschel v. Oregon Fire, etc., Ins. Co.,* 4 Wash. 476 (30 Pac. 735); *Cole v. Union Central Life Ins. Co.,* 22 Wash. 26, 31 (60 Pac. 68, 47 L. R. A. 201); *Hall v. Union Central Life Ins. Co.,* 23 Wash. 610 (63 Pac. 505, 51 L. R. A. 288).

The second objection, viz., that there is no provision in the contract declaring a forfeiture for the nonpayment of an installment of a premium, is equally without merit. The assured was given his option either to pay the premiums annually or in quarterly installments. As he chose the latter method, he was bound by it until he gave notice that he desired to pay in the other manner. This method of payment was thus a part of his contract, and a failure to comply therewith constituted a breach.

The judgment is reversed, and the cause remanded with instructions to enter judgment for the appellant.

ANDERS, J., concurs.

DUNBAR, J., (concurring).—I concur in the result, for the reason that the record shows that the assured had

actual knowledge, outside of the stipulation in the policy, of the limitations of the agent, but not on the ground stated in the majority opinion. I make no question of the correctness of the rule stated in relation to the general law of agency, but do not think the strict rule ought to apply to insurance and other similar companies which do their business exclusively through agents. In such cases all the actors are necessarily agents. The company is composed of agents; and persons who contract with them will, in spite of all theories of law, rely upon the statements of such agents, and will regard them as the company. They will not scrutinize closely all the conditions contained in the body of the policy, and could not understand many of them if they did. They will rely upon the statements of the agents appointed by the company, and who come to deal with them armed with the recommendations of the company; and innocent parties, who act on their advice, ought not to suffer. In addition to this, the contracts are, in a sense, one-sided. They are prepared in advance by the agents of the company, without any consultation with or consideration by the assured, and they place the parties in a different position, so far as responsibility is concerned, from the ordinary mutual contract or agreement made and entered into between individuals. Such is the modern doctrine of the courts, and such is the doctrine of this court as announced in *Hart v. Niagara Fire Ins. Co.,* 9 Wash. 620 (38 Pac. 213, 27 L. R. A. 86), and cases cited therein.

REAVIS, C. J.—I concur for the reasons stated by Judge DUNBAR.