12958

FENDER v. NEW YORK LIFE INSURANCE CO.

(155 S. E., 577)

December, 1929.

*Messrs. Thomas & Lumpkin* and *J. Heyward Jenkins,* for appellant,

*Messrs. J. C. Colcock, Claud M. Aman* and *Alfred Wallace, Jr.,* for respondent,

August 13, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This action was brought by the respondent to recover the sum of $1,500.00 and interest thereon, alleged to be due to her as the named beneficiary of a life insurance policy, issued and delivered by the appellant on the life of Arthur E. Fender, the insured, who was the husband of the respondent.

The appellant admitted the issuance and delivery of the policy to Fender and the death of the insured. It defended the action because, as it alleged, the insured had violated certain conditions precedent of the policy, set forth in the application upon which the same was issued and delivered, and on the ground that there was fraud on the part of the insured in obtaining the insurance. The alleged facts, upon which the defenses of the appellant were based, are referred to and discussed hereinafter.

The respondent sought to answer the defenses of the appellant upon the theory that there had been a waiver of the grounds of forfeiture on the part of the appellant. Perhaps the position of the respondent was more in the nature of an estoppel than one of waiver; but both the parties have regarded the issue, raised by the respondent, as one of waiver, and we shall follow them in that respect.

While there are distinguishing features between "waiver" and "estoppel," waiver belongs to the family of estoppel, and the terms are frequently used as meaning the same thing in the law of insurance contracts. 40 Cyc., 255.

The trial of the case in the Court of Common Pleas of Beaufort County, before Honorable T. S. Sease, presiding Judge, and a jury, resulted in a verdict in favor of the respondent for the full sum demanded by her in her complaint, less the amount due on a promissory note of the insured, which the appellant accepted, in payment of the first premium on the policy.

Thirty-two jurors were in attendance upon the Court. In impaneling the jury for the trial of the case, the Circuit Judge held that seven of these were not quali-

fied to serve, six for the reason that they were policyholders of the insurance company, and the seventh because he was a "corresponding agent" of the appellant. By its first exception, appellant contends that this action on the part of the Court was erroneous, and that it resulted in prejudice to its cause. It appears in the record that the policyholders of the appellant are entitled to certain dividends on their policies, and the amounts of these depend upon the profits and losses incurred by the appellant in the conduct of its business. The duties of the "corresponding agent" of the appellant do not seem to appear in the record, but we assume that he was an employee of the insurance company.

In *State v. Sharpe,* 138 S. C., 58, 135 S. E., 635, 637, we said : "Our Circuit Judges should be very careful to keep off juries persons who are related to the parties, or who, in any manner, have an interest in the result of the cause." We are now of that same opinion.

Perhaps all the jurors, who were held to be disqualified by the Circuit Judge, would have rendered a fair and impartial verdict. It is not necessary now to decide that any of them, especially the policyholders, were not qualified to sit in the case. It is well recognized in this State that questions relating to the fitness of jurors to serve in cases are very much within the discretion of the trial Judge. This Court consistently refuses to reverse a case because of the Judge's rulings in matters thereabout, unless it plainly appears that there was an abuse of the discretion allowed to the Judge, and that such abuse of discretion may have resulted in harm to the losing party. Following our many precedents, too numerous to cite, we must conclude that there was no prejudicial error to the appellant, as alleged by it in its first exception.

The second exception imputes error to the presiding Judge because he refused to direct a verdict in favor of the appellant. The ground upon which it is contended this motion should have been granted is as follows : That the application for the insurance, upon which the policy was issued, con-

tained as a part thereof this agreement on the part of Fender, the insured:

"That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination."

The appellant asserts that the uncontradicted testimony showed that Fender, the insured, in violation of the condition precedent, above mentioned, consulted and was treated by a physician after his medical examination without the consent or knowledge of the appellant and thereby the contract of insurance was voided and did not become effective, although issued and delivered to the insured.

The exception brings us to a review of the facts, as adduced in the trial, both from the standpoint of the appellant and the respondent.

On March 22, 1929, Fender, who lived at Hardeville, applied to J. K. Beach, appellant's soliciting agent, for a policy of $1,000.00 on his life, naming his wife, the respondent, as the beneficiary. Fender was examined on April 9, 1929, by Dr. E. C. B. Mole, the company's medical examiner. Following that application and medical examination, the policy applied for was issued and delivered to the insured on or about April 19, 1929. At the time of the delivery of that policy (which we may call the first policy), Fender requested additional insurance in the sum of $1,500.00. That policy (called the second policy, and one which is involved in this suit) was written on April 24, 1929, and forwarded through the Savannah office of the appellant to Beach. On April 27, 1929, Beach called at Fender's home to deliver the second policy, but he found Fender was not feeling well and declined to deliver the policy at that time. A few days later, Fender wrote Beach that he was well. In the afternoon of May 14, 1929, Beach called again at Fender's home and

delivered the second policy. Within a few hours, in fact, perhaps within little more than one hour, Fender suddenly died. The appellant paid the first policy, but declined to make payment of the second.

As a part of the application and the report of the medical examination, the insured made the following certificate:

"On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete and true, and agree that the company believing them to be true shall rely and act upon them."

At the time of his request for the issuance of the second policy, Fender signed a "supplemental application" to the appellant for the issuance of the additional insurance, in the following form:

"Supplemental to my application for insurance dated the 22nd day of March, 1929, I hereby apply for $1,500.00 additional insurance on the ordinary life plan, to take effect as of April 16, 1929, and I reiterate and confirm all the agreements, statements, representations and answers contained in my said original application and agree that said original application shall form a part of said additional insurance contract. I further warrant and declare that no change has occurred in my health or insurability since the date of my said original application."

The appellant alleged, and the proof shows, that on the 2nd or 3rd day of May, 1929, subsequent to the date on which Fender made his supplemental application for insurance, and a few days prior to the date of the delivery of the policy sued on, Fender visited and consulted Dr. Charles Usher of Savannah, Ga., on account of illness, and that the physician at that time diagnosed Fender's illness as influenza; that he advised Fender of that fact and prescribed for his illness.

The appellant claimed, and sought to establish, that it had no knowledge or information as to the visit of Fender to Dr. Usher, and the treatment of the insured by the physician. And it contended that the failure of the insured to disclose these facts was in violation of his agreement with the company, and "that the policy was issued and delivered through false and fraudulent representations."

The respondent endeavored to establish by testimony her theory that Beach, the agent, did have knowledge of the visit to, and treatment by, Dr. Usher, at the time of the delivery of the policy, and on account of the conduct and actions of the agent, when fully advised of the facts, the appellant had waived, or was estopped to assert, any forfeiture.

The visit of the insured to Dr. Usher and the treatment he received were conclusively established. Dr. Usher so testified. Mrs. Fender, the respondent, was with her husband at the time, and her testimony frankly agreed with that of the physician.

The conflict in the testimony relates to the information imparted to the agent, Mr. Beach. He testified that about 3:45 p. m. on May 14, 1929, he visited Fender's home for the purpose of delivering the policy; that Fender, a section foreman of a railroad company, was not at home at the time, but came in from his work a few minutes later; that he talked to Fender, and ate supper with him, Fender eating a very hearty meal; that he delivered the policy sued on, took Fender's note for the first premium, and a few minutes after supper left the home; that Fender did not at any time inform him in any manner that he had consulted a doctor since he took out the insurance.

On his cross examination, Mr. Beach admitted that on the occasion of his first visit to Fender's home to deliver the policy, he found the insured, a young man, "lying down with his clothes on"; that he told Fender that he had better take some medicine. He did not recall advising Fender to

go and see a doctor, but he admitted that he might have done this. The witness admitted that Mrs. Fender and Mrs. Fender's mother, Mrs. Bailey, were present upon the occasion of his visit by him to Fender's home. He admitted the presence of Mrs. Fender at Fender's home upon the occasion of the visit when he ate supper with Fender and delivered the policy.

Mrs. Bailey and Mrs. Fender both testified to the effect that upon the first visit of Beach to deliver the policy, when Fender was a little sick, that the agent declined to deliver the policy at that time, told Fender that he would come back and make the delivery when Fender got well, and that Beach said, as related by Mrs. Bailey: "You had better go over to Savannah to see a doctor." Mrs. Fender swore that Beach advised her husband "to go over and see Dr. Usher."

Mrs. Fender further testified that on the day the policy was delivered, soon after Beach came to her home, and prior to the return of the insured to the home, she told Beach that her husband was getting along well; that he had been over to see Dr. Charles Usher, and got some medicine from him; that he took some of the medicine prescribed by Dr. Usher and the following Monday Fender went back to work. She also swore that soon after coming in from his work, her husband told Beach of his visit to Dr. Usher, and that as a result of the physician's treatment, he had been able to go back to his work.

The testimony of Dr. Usher was to the effect that, in all likelihood, the insured died from a heart trouble known as cardiac, the after effects of influenza; but he did not and could not, say positively that this was the cause of his death. Dr. Usher did not see the insured after he visited his office. Dr. Mole, the company's medical examiner, who got to Fender soon after he died, testified that the insured was one of the healthiest specimens of physical manhood that he had ever examined, and while he could not say positively what

was the cause of death, it seemed to be his opinion that he died from acute indigestion.

Appellant's third exception complains of error on the part of the Circuit Judge in refusing to direct a verdict in its favor, on the ground that the policy stated that no provision, representation, or condition of the policy might be waived other than by an executive officer of the company; and that the uncontradicted testimony showed that the soliciting agent, Beach, was not such an executive officer, and that any act or conduct of his did not result in a waiver on the part of the appellant as to the written statement of the insured that he had not consulted or been treated by any physician since his medical examination.

The fourth exception imputes error to the trial Judge because of his instruction to the jury that even the non-waiver clause, to which the third exception referred, could be waived.

The appellant has argued its second, third, and fourth exceptions together. We will dispose of them in a like manner.

The holdings of the Circuit Judge against the appellant were correct under previous decisions of this Court.

The insured, as well as the insurer, may waive a condition precedent to the delivery of a policy which is solely for his benefit. *Going v. Insurance Co.,* 58 S. C., 201, 36 S. E., 556.

While dissenting on other grounds to the judgment of the Court, Mr. Justice Woods conceded in *Huestess v. Insurance Co.,* 88 S. C., 31, 70 S. E., 403, 408: "The rule has been laid down in this State that an insurance company cannot set up forfeiture on account of facts known by the agent of the company to be existing at the time of making the contracts."

The recent cases of *Rogers v. Insurance Co.,* 135 S. C., 89, 133 S. E., 215, 45 A. L. R., 1172, and *Jennings v. Insurance Co.,* 146 S. C., 41, 143 S. E.,

668, support the proposition that a condition precedent may be waived. There are numerous other decisions in line with these cases—too many of them for us now to refer to.

But the appellant strongly urges, and mainly rests its case upon the proposition, that the soliciting agent, Beach, had no authority to waive the stipulation in the policy that waiver could only be made by an executive officer of the company. The law, as recognized by this Court, however, is absolutely against appellant's contention. Mr. Justice Jones, speaking for the Court in *Gandy v. Insurance Co.*, 52 S. C., 224, 29 S. E., 655, 656, said this:

"An insurance contract, like any other contract, may be altered by the contracting parties, and the insurer may, of course, waive any provision for forfeiture therein. It may also waive the provision relating to the manner or form of waiver by its agents, since this clause has no greater sanctity than any other part of the instrument."

A case practically on all fours with the case at bar in many respects was that of *McLaurin v. Mutual Life Insurance Co.*, 115 S. C., 59, 104 S. E., 327, 328. The policy in that case contained this agreement:

"That only the president, vice president, a second vice president, a secretary, or the treasurer of the company (1) can make, modify, or discharge contracts, or (2) waive any of the company's rights or requirements, and that none of these acts can be done by the agent taking the application." (The numerals are supplied.)

Mr. Justice Gage, for this Court, in referring to the quoted stipulation, said this:

" * * * the president, the vice president, and the secretary cannot solicit, or collect, or deliver; they must commit that to others, and along with it the discretions we have adverted to. * * * The power in the local agent to withhold the policy involves the power to deliver it; there is no escape from that conclusion.

"But the appellant says, even though the local agent should have concluded that the applicant was in good health, yet, if the fact be the contrary, then the policy never operated. The parties intended to make a contract, and that involved the doing of everything necessary to carry it into operation, to wit, the acceptance of the applicant as a person in good health. They never intended to leave open that one essential element of the contract, when the parties dealt fairly one with the other. It is plain, therefore, that upon the facts it is not necessarily a case of waiver or of estoppel but a case where the local agents, in the exercise of the powers lodged in them, accepted the premium and delivered the policy. That act binds their principal, the defendant."

The appellant places its reliance upon the recent case of *Cooley v. Metropolitan Life Insurance Co.,* 153 S. C., 280, 150 S. E., 793, 795, and *Welch v. Insurance Co.,* 124 S. C., 492, 117 S. E., 720. We are unable to see how either of these cases is of any benefit to it.

The opinion of Mr. Justice Cothran in the *Cooley case,* depended upon so strongly by the appellant, cannot be regarded as authority, because the other members of the Court only concurred in the result thereof. But Mr. Justice Cothran, in his opinion there delivered, recognized that a condition precedent to liability on the part of an insurance company could be waived. The learned jurist quoted with approval the following from 37 C. J., 403:

"A stipulation or agreement by the company and an applicant that the policy of insurance shall not take effect or be binding on the company unless the first premium is paid while the applicant is alive and in good or sound health is valid and will be given effect according to its terms; it is a condition precedent to liability on the part of the company and a performance or waiver thereof is necessary in order to render the contract of insurance effective and enforceable, unless the case falls within the operation of an incontestable clause."

The nonsuit granted by the Circuit Judge in the *Welch case,* on the ground that three conditions precedent had not been performed, was sustained by this Court. But, as we read that case, there was nothing whatever to show any waiver, or estoppel, as to the performance of those conditions on the part of the insurance company.

The judgment of this Court is that the judgment below be affirmed.

MESSRS. JUSTICES STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE MENDEL L. SMITH concur.

MR. CHIEF JUSTICE WATTS did not participate.

MR. JUSTICE COTHRAN (dissenting) : It is proposed to be held in this case that notwithstanding a specific written agreement between an applicant for life insurance and the company proposing to issue a policy, to the effect: "That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination," and the further specific stipulation: "That only the president, a vice-president, a second vice-president, a secretary or the treasurer of the company can make, modify or discharge contracts, or waive any of the company's rights or requirements; that notice to or knowledge of the soliciting agent or the medical examiner is not notice to or knowledge of the company, and that neither one of them is authorized to accept risks or to pass upon insurability"—a soliciting agent, whose agency consisted solely in the receipt and transmission to the company of the application and the delivery of the policy upon the conditions agreed upon, may launch the insuranec company into a contract which it did not propose to make and which he was specifically instructed not to consummate, upon the ground that his knowledge of an existing fact, which under the terms of the application affected materially

the insurability of the applicant and should have prevented the delivery of the policy, was such notice to the company of such fact as would amount to a waiver by the company of the condition precedent which such facts constituted.

It is conceded that between the date of the applicant's medical examination and the delivery of the policy, the applicant consulted and was treated by a physician for an ailment that probably caused his death within less than an hour after the delivery of the policy by the agent. There is evidence tending to show (which, in this phase of the case, must be admitted) that before the policy was delivered, the soliciting agent was informed of such consultation and treatment. Notwithstanding the foregoing stipulations, agreed to in writing by the applicant, it is proposed to be held that his knowledge of the breach of the condition precedent must be imputed to the company as evidence of its intention to waive such condition.

If the Court should now reaffirm the doctrine announced without qualification, in the case of *Pearlstine v. Ins. Co.,* 74 S. C., 246, 54 S. E., 372, 373, the judgment in the case at bar would necessarily be affirmed. The Court there said:

"On the second point, the views of the Circuit Court were in accord with a line of decisions in this country, which hold that it is not competent to show by parol evidence that a condition stated in an insurance policy as essential to its validity was known by the local agent not to exist at the time the policy was issued, when the policy provides that no officer or agent shall have power to waive any of the conditions of the policy except by written indorsement thereon. This view is stated and maintained with great force in *Northern Assurance Company of London v. Grand View Building Association,* 183 U. S., 308 [22 S. Ct., 133, 46 L. Ed., 213], where the authorities in its support, both English and American, are reviewed. but the rule adopted in this State and the large majority of the states of the Union is that an insurance company cannot

avail itself of provisions in the policy that it should be void if certain facts therein mentioned as essential to the insurance should be found not to exist when these facts were known to the agent not to exist when the policy was issued through him, and the existence of such facts and the knowledge of the agent may be proved by parol."

In the *Pearlstine case* the action was upon a policy of fire insurance. The point at issue was whether the plaintiff could show by parol evidence that although the policy was issued to T. W. Pearlstine, the stock of goods belonged to S. W. Pearlstine, that it was issued for his benefit; and that the agent who issued the policy knew that fact. The Court below excluded the evidence and this Court reversed the direction of a verdict for the defendant, saying as above quoted.

The Court will take judicial notice of the fact that agents for fire insurance have power to issue policies; they are provided with them by the companies, and are not required to submit applications to the home office. Naturally, under these circumstances, knowledge of the agent of a material objection to the issuance of a policy will be imputed to the company which has clothed him with the fullest powers. I do not think that the doctrine, so broadly announced in the *Pearlstine case,* should be extended to life insurance agents, whose authority is limited to the acceptance of applications, the transmission of them to the home office for approval, and the delivery of the policies, under the specific limitations agreed to in the applications.

As a matter of course the unqualified declaration above quoted from the *Pearlstine case* must be considered in the light of the facts of that case, which showed a case of fire insurance where the agent had the authority, without referring the matter to the home office, to deliver the policy which he had the authority to fill out and deliver.

The cases cited by the learned Justice who wrote the opinion in the *Pearlstine case,* in suport of the unquali-

fied declaration, were *Pelzer Co. v. Ins. Co.,* 36 S. C., 213, 15 S. E., 562; *Graham v. Ins. Co.,* 48 S. C., 195, 26 S. E., 323, 59 Am. St. Rep., 707; *Gandy v. Ins. Co.,* 52 S. C., 224, 29 S. E., 655; and *Schroeder v. Ins. Co.,* 51 S. C., 181, 28 S. E., 371.

The *Pelzer case* was one of fire insurance; the policy contained no limitation upon the power of the agent.

The *Graham case* was also one of fire insurance; the policy contained no limitation upon the power of the agent.

The *Gandy case* was also one of fire insurance. The Court said:

"The knowledge of an agent, acquired within the scope of his agency, is imputable to the principal. There was evidence tending to show that the agent had full power to solicit insurance, receive premiums, and write, countersign, and deliver policies of insurance. There is nothing to suggest any limitation of the agent's power in these regards. The receipt of the premium and the delivery of the policy were the acts of the principal, and, if the testimony of plaintiff is true, the principal, through its agent, had knowledge of the concurrent insurance at the time of the inception of the contract of insurance. Under such circumstances, it would be fraud on the insured for the insurer to assert a forfeiture, which, by such acts, it declared it would not assert."

The *Schroeder case* was also one of fire insurance. The policy does contain a limitation upon the power of the agent. The Court at that time was composed of four Justices. McIver, Pope, Gary, and Jones. The appeal was from an order of nonsuit. The leading opinion by Justice Gary held that the nonsuit was improper for the reason that there was evidence of waiver for submission to the jury. He does not discuss the effect of the limitation upon the power of the agent. Justice Pope, I assume, concurred in the opinion of Justice Gary. Justice Jones concurred in the result upon the ground that the plaintiff should have had the right to

show waiver in reply, and according to the well-settled rule on nonsuit was improper. The Chief Justice (McIver) filed a dissenting opinion holding that the plaintiff could only show waiver in the form prescribed in the policy. I think therefore, that the case is authority only for the position that the nonsuit was improper; it has no bearing upon the doctrine unqualifiedly announced in the *Pearlstine case*.

I do not think that it can be controverted that the stipulation in the application for insurance, agreed to by the applicant, that the policy should not take effect if the applicant had consulted or been treated by any physician since his medical examination, constituted a condition precedent to the consummation of the policy contract.

In *Welch v. Ins. Co.*, 124 S. C., 492, 117 S. E., 720, the application and the policy contained this stipulation: "This policy shall not take effect until the first premium is paid and the policy delivered, nor unless on the date of said payment and delivery of the policy the insured is alive and in sound health." The policy was not delivered for the reason that, when it was received by the local agent for delivery, the insured was sick. The beneficiaries brought an action for damages on account of the refusal to deliver. The Court held: "The appellant was entitled to a nonsuit as asked for on the whole case, on the ground that the application and policy contained three conditions precedent: First, payment of the premium; second, delivery and acceptance of the policy; third, a state of good health at the time of delivery." See also the array of authorities sustaining the proposition set forth in the case of *Cooley v. Ins. Co.*, 153 S. C., at pages 288 to 292, 150 S. E., 793.

If then the stipulation under consideration constituted a condition precedent, it touched the contract in a most material particular, the inception of its effectiveness as a contract, its birth. If the local agent had specifically declared to the applicant that the fact that he had been medically treated between the date of his examination and the time

of the delivery of the policy was a matter of no consequence, he would have attempted to change the terms of the written contract by parol, an attempt inhibited by the parol evidence rule. See *Gladden v. Keistler,* 141 S. C., 524, 140 S. E., 161.

A very striking statement of the rule and the reasons for it is made in the case of *Northern Assurance Co. v. Building Asso.,* 183 U. S., 308, 22 S. Ct., 133, 141 46 L. Ed., 213, where the Court quotes with approval from the case of *Franklin F. Insurance Co. v. Martin,* 40 N. J., Law, 568, 22 Am. Rep., 271:

"Upon principal, it is impossible to perceive on what ground such testimony should be received. A policy of insurance is a contract in writing, of such a nature as to be within the general rule of law that a contract in writing cannot be varied or altered by parol testimony. If it be ambiguous in its terms, parol evidence, such as would be competent to remove an ambiguity in other written contracts, may be resorted to for the purpose of explaining its meaning. If. it incorrectly or imperfectly expresses the actual agreement of the parties, it may be reformed in equity. If strict compliance with the conditions of insurance, with respect to matters to be done by the insured after the contract has been concluded, has been waived, such waiver may, in general, be shown by extrinsic evidence, by parol. Further than this, it is not safe for a Court of law to go. To except policies of insurance out of the class of contracts to which they belong, and deny them the protection of the rule of law that a contract which is put in writing shall not be altered or varied by parol evidence of the contract the parties intended to make, as distinguished from what appears, by the written contract, to be that which they have in fact made, is a violation of principle that will open the door to the grossest frauds. * * * A Court of law can do nothing but enforce the contract as the parties have made it. The legal rule that in Courts of law the written contract shall be regarded as the sole repository of the intentions of the parties,

and that its terms cannot be changed by parol testimony, is of the utmost importance in the trial of jury cases, and can never be departed from without the risk of disasterous consequences to the rights of parties."

But waiving the palpable infraction of the parol evidence rule, the plaintiff is confronted with the insurmountable obstacle of the provision in the application above quoted.

The issue appears to me to be concluded by the case of *Northern Assurance Co. v. Building Association,* 183 U. S., 308, 22 S. Ct., 133, 46 L. Ed., 213, where it was held, quoting syllabus:

"It is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered."

The Court in the opinion stated:

"* * * That, where waiver is relied on, the plaintiff must show that the company with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that where the waiver relied on is an act of an agent, it must be shown, either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent."

And further:

"It is not pretended, as we understand the plaintiffs position, that by any language or declaration of the agent, at the time the policy was delivered and the premium paid, he claimed to have power to waive any provision or condition of the policy, nor that plaintiff was induced to accept the policy by any promise of the agent to procure the assent of the company to permit the outstanding insurance and to waive the condition. The plaintiff's case stands solely on the proposition that because it is alleged and the jury have found, that the agent had notice or knowledge of the exist-

ence of insurance existing in another company at the time the policy in suit was executed and accepted, and received the premium called for in the contract, thereby the insurance company is estopped from availing itself of the protection of the conditions contained in the policy. In other words, the contention is that an agent with no authority to dispense with or alter the conditions of the policy could confer such power upon himself by disregarding the limitations expressed in the contract, those limitations being according to all the authorities presumably known to the insured. It was not shown that the company, when it received the premium, knew of the outstanding insurance, nor that, when made aware of such insurance, it elected to ratify the act of its agent in accepting the premium. On the contrary, all the record discloses is that the jury found that the agent knew, when the policy in the defendant company was issued and delivered to the plaintiff, that there was then subsisting fire insurance to the amount of $1,500 in another fire insurance company, and that such knowledge had been communicated to the agent by or on behalf of the assured. There is no finding that the agent communicated to the company or to its general agent at Chicago, at the time he accounted for the premium, the fact that there was existing insurance on the property, and that he had undertaken to waive the applicable condition. Indeed, it appears from the letter of defendant's manager at Chicago, to whom the proofs of loss had been sent, which letter was put in evidence by the plaintiff and is set forth in the bill of exceptions, that the additional insurance held by the plaintiff was without the knowledge or consent of the company; and it further appears, as was found by the jury, that immediately on the company's being informed of the fact, the amount of the premium was tendered by the agents of the company to the insured. So that there is not the slightest ground for claiming that the insurance company, with knowledge of the facts, either accepted or retained the premium. The plaintiff's case,

at its best, is based on the alleged fact that the agent had been informed, at the time he delivered the policy and received the premium, that there was other insurance. The only way to avoid the defense and escape from the operation of the condition, is to hold that it is not competent for fire insurance companies to protect themselves by conditions of the kind contained in this policy. So to hold would, as we have seen, entirely subvert well-settled principles declared in the leading English and American cases, and particularly in those of this Court."

In *New York Life Ins. Co. v Fletcher,* 117 U. S., 519, 6 S. Ct., 837, 842, 29 L. Ed., 934, the Court said:

"The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations therein expressed."

In *Penn M. L. Ins. Co. v. Blount,* 165 Ga., 193, 140 S. E., 496, quoting syllabus, it was held:

"Where application for life insurance policy made part of policy, provided that insurance should not be in force until first premium thereon is actually paid and that agents could not alter contract, and local agent, in violation of specific instruction, delivered policy to applicant without receiving premium, which was not actually known by any officials, or other agents of insurer, local agent's knowledge of delivery and surrender of policy to applicant is not imputable to insurer, and is not knowledge of insurer."

In *Prudential Ins. Co. v. Moore,* 231 U. S., 560, 34 S. Ct., 191, 58 L. Ed., 367, it was held, quoting syllabus:

"Where the policy itself expressly provides that it cannot be varied by anyone except an officer of the company issuing it, the company is not estopped to contest the policy on the ground of misrepresentatons or concealment in the application because its agent has knowledge of actual conditions."

In *Slocum v. Ins. Co.,* 228 U. S., 364, 33 S. Ct., 523, 527, 57 L. Ed., 879, the Court said:

"One who deals with an agent, knowing that he is clothed with a circumscribed authority and that his act transcends his powers cannot hold his principal; and this is true whether the agent is a general or a special one, for a principal may limit the authority of one as well as of the other."

In Tiffany, Agency, p. 53, it is said:

"* * * If a third person has notice of limitations on an agent's authority, he cannot gain rights against the principal by an act of the agent which exceeds the known limitations."

In *Maryland Casualty Co., v. Campbell* (C. C. A.), 225 F., 437, 440, the Court said:

"The defendant, like any other principal, could limit the authority of its agents, and thus bind all parties dealt with to whom such limitation was disclosed. An insurer cannot be deemed to have waived a breach of a warranty contained in its policy, because its agent had notice or knowledge of the breach, where the policy expressly withheld from such agent authority to change the policy, or to waive any of its provisions, and provided that notice to such agent or knowledge of his should not be held to effect a waiver of the contract or any part of it"—citing *New York Life Ins. Co. v. Fletcher,* 117 U. S., 519, 6 S. Ct. 837, 29 L. Ed., 934; *Northern Assurance Co. v. Building Association,* 183 U. S., 308, 22 S. Ct., 133, 46 L. Ed., 213; *Prudential Ins. Co. v. Moore,* 231 U. S., 560, 34 S. Ct., 191, 58 L. Ed., 367; *Ætna Life Ins. Co. v. Moore,* 231 U. S., 543, 34 S. Ct., 186, 58 L. Ed., 356.

In *Hill v. Ins. Co.* (C. C. A.), 35 F. (2d), 132, 134, the Court, reversing a judgment in favor of the plaintiff, quotes from *Collins v. Ins. Co.,* 32 Mont., 329, 80 P., 609, 1092, 108 Am. St. Rep., 578, as follows:

"In such case the knowledge of the agent cannot be imputed to the principal so as to bind it, for the obvious reason

that the particular act or declaration in controversy is known by the party dealing with him to be beyond the scope of his authority. The opposite view would render nugatory and destroy the very precaution taken by the principal to prevent the agent·from departing from the strict terms of the contract without authority granted, as in the contract provided, and would result in a substitution of a different contract for the one made by the parties."

In *Royal Ins. Co. v. Poole,* 148 Va., 363, 138 S. E., 487, 488, the Court said:

"An insurance company has a right to limit the authority of its agent, and that, when an insured has notice of the limitation of authority of such an agent, then the knowledge of its agent that material warranties have been breached or are untrue is not to be imputed to the company, and the company will not be deemed to have waived the condition or be estopped to declare the policy void; or, to state it differently, we think it may fairly be said that the weight of the most recent adjudications is to the effect that, not only may an insurer limit the authority of an agent, but that when such limitations are brought to the actual knowledge of the insured, then he is bound thereby, and though the agent exercises functions which might have otherwise entitled him to be regarded as a general agent, he cannot, contrary to the terms of the contract, waive conditions of forfeitures, unless it is shown that such waiver was known to the insurer. * * * It will thus be seen that the distinguishing features of the class of cases we are dealing with are that the authority of the agent is limited, that the insured has notice of this limitation of power (and signing an application for insurance containing the limitation is regarded as such notice whether applicant reads the notice or not), and the insured has no notice of the falsity of the answers."

In *Lumber Underwriters v. Rife,* 237 U. S., 605, 35 S. Ct., 717, 59 L. Ed., 1140, the Court said:

"When a policy of insurance is issued, the import of the transaction, as every one understands, is that the document embodies the contract. It is the dominant, as it purports to be the only and entire, expression of the parties' intent. In the present case this fact was put in words by the proviso for the indorsement of any change of terms. Therefore when, by its written stipulation, the document gave notice that a certain term was insisted upon, it would be contrary to the fundamental theory of the legal relations established to allow parol proof that at the very moment when the policy was delivered that term was waived. It is the established doctrine of this Court that such proof cannot be received. *Northern Assurance Co. v. Grand View Bldg. Asso.,* 183 U. S., 308, 22 S. Ct., 133, 46 L. Ed., 213; *Northern Assur. Co. v. Grand View Bldg. Asso.,* 203 U. S., 106, 107, 27 S. Ct., 27, 51 L. Ed., 109, 111; *Connecticut F. Ins. Co. v. Buchanan,* 141 F., 877, 883, 4 L. R. A. (N. S.), 758, 73 C. C. A., 111. See *Penman v. St. Paul F. & M. Ins. Co.,* 216 U. S., 311, 30 S. Ct., 312, 54 L. Ed., 493; *Ætna L. Ins. Co. v. Moore,* 231 U. S., 543, 559, 34 S. Ct., 186, 58 L. Ed., 356. There is no hardship in this rule. No rational theory of contract can be made that does not hold the assured to know the contents of the instrument to which he seeks to hold the other party."

In *Fludd v. Ins. Co.,* 75 S. C., 315, 55 S. E., 762, 764, the Court said:

"The knowledge of an agent acquired within the scope of his agency is imputable to his principal, and, if an insurance company, at the inception of the contract of insurance, has knowledge of facts which render the policy void at its option, and the company delivers the policy as a valid policy, it is estopped to assert such grounds of forfeiture."

In the case of *Jones v. New York Life Ins. Co.,* 69 Utah, 172, 253 P., 200, 202, the action was against the same company sued in the case at bar; it involved a construction of the same provisions in the application; and the facts were

strikingly parallel. The deceased signed an application for life insurance at the solicitation of a local agent of the company; his medical examination was had and both application and report were transmitted to the company and approved; the policy was written up and forwarded to the local agent for delivery and payment of the premium under the conditions named in the application, on January 19th; it was received by the agent on the 24th; in the meantime, on the 21st, the applicant became sick and on the 22d was removed to a hospital for treatment for spinal meningitis; on the 24th a friend of the applicant applied to the agent for the policy, paid the premium, received the policy, and delivered it to the wife of the applicant, the beneficiary named; there was evidence that when the friend called upon the agent for the policy, and before its delivery, he advised the agent of the serious illness of the applicant and that the doctors who were attending him held out little hope of his recovery; on the 28th, the applicant died.

It was contended for the plaintiff, as it is contended here, that by the acts of the local agent, in delivering the policy and collecting the first premium during the lifetime of the applicant, with knowledge that he had consulted and been treated by a physician since his medical examination, the limitation or right to have the insurance become effective was thereby waived by the company. The Court denied recovery, saying:

"It is expressly stated in the application that no one save the president, vice-president, second vice-president, secretary or treasurer of the company could in any way make, modify, or discharge contracts or waive any of the company's rights or requirements. That instrument also provided that notice to or knowledge of the soliciting agent or the medical examiner was not notice to or knowledge of the company, and that neither the agent nor the medical examiner is authorized to accept risks or to pass upon insurability. The foregoing were provisions of the application

signed by the insured at the time the application was made. There is nothing to show that the insured was induced by any false or erroneous statements as to the meaning of those provisions and it must therefore be presumed that the insured knew the contents of the application and bound himself by the terms therein provided. In other words, the insured was charged with knowledge that no one save the officers enumerated in the application could waive any of the company's rights or requirements and that notice to the soliciting agent was not notice to the company and that the agent was not authorized to accept risks or to pass upon insurability. The first provision of the application quoted was notice to the insured of the conditions necessary to exist in order that the contract of insurance might become effective. It was likewise notice to the applicant that if he desired the insurance to be effective from the date of the application he was required to pay the first premium at that time. The appellant has only such right to claim a contract of insurance as the insured might have had if he were still living. It is difficult, therefore, to see under what theory the appellant can now maintain that a contract of insurance existed upon the life of her husband in the face of the proven fact that the insured had consulted a physician between the date of the application and the delivery of the policy and the payment of the first premium.   *   *   * There is no testimony, except by implication, as to the authority or extent of the authority of the agent, Hesielt. He evidently had authority to solicit insurance and to deliver the policy and collect the first premium. The acts of respondent in accepting the application forwarded by him and in mailing to him the policy of insurance is recognition of his agency to the extent of soliciting insurance and delivering the policy and collecting the first premium. That evidently was the extent of his authority. There is nothing to indicate that he was what is usually denominated a general agent, if by the term general agent is understood, as

seems to be by some of the authorities, an agent authorized to make a contract for and on behalf of his principal. Clearly Heseilt was not authorized to enter into a contract of insurance on behalf of respondent. To hold that the agent could, by delivery under the conditions shown by appellant's testimony, bind his principal, would in legal effect be a holding that he had a right to make a contract of insurance for his principal. The application in this case distinctly provides that neither the soliciting agent nor the medical examiner 'is authorized to accept risks or to pass upon insurability.' The respondent company had passed upon the insurability of the insured when it issued its policy of insurance on January 19th upon the condition of health of the applicant at the date of his application, January 10th, and not upon the condition of his health on the date the policy was delivered if that condition of health was then different from what it was on the date of the application."

The Court further said:

"The doctrine of waiver is hardly applicable to the facts here. The theory of the waiver of the terms of a contract must necessarily presuppose the existence of a valid contract. Unless and until a contract exists between the contracting parties it would seem to be illogical to contend that either party can be said to have waived any of the terms or requirements of the contract."

See, also, *Thornton v. Ins. Co.*, 116 Ga., 121, 42 S. E., 287, 94 Am. St. Rep., 99; *Wolf v. Ins. Co.*, 75 Mo. App., 337; *Jander v. Ins. Co.*, 16 Ohio Cir. Ct. R., 536; *Liverpool, L. & G. Ins. Co. v. Richardson*, 11 Okl., 585, 69 P., 938; *Nixon v. Ins. Co.*, 25 Wash., 254, 65 P., 195; *Crook v. Ins. Co.*, 112 Md., 268, 75 A., 388; *Gish v. Ins. Co.*, 16 Okl., 59, 87 P., 869, 13 L. R. A (N. S.), 826; 37 C. J., 531; *Carpenter v. Ins. Co.*, 212 Mo. App., 336, 246 S. W., 623; *2d Joyce Insurance* (2d. Ed.), §§ 429, 515; *Anders v. Ins. Co.*, 62 Neb., 585, 87 N. W., 331.

In support of the statement that, "The law as recognized by this Court, however, is absolutely against appellant's contention," Mr. Justice Blease cites the case of *Gandy v. Ins. Co.*, 52 S. C., 224, 29 S. E., 655, where the Court said:

"An insurance contract, like any other contract, may be altered by the contracting parties, and the insurer may, of course, waive any provision for forfeiture therein. It may also waive the provision relating to the manner or form of waiver by its agents, since this clause has no greater sanctity than any other part of the instrument."

The Court there declares that the principal may alter or waive any provision in a contract, including the provision relating to the mannar or form of a waiver by an agent. Of the correctness of that proposition, there can be no controversy; but it is manifestly wide of the mark that an agent, who is specifically denied the authority to make a contract or to waive any provision therein, may nevertheless bind his principal to a contract which he did not propose to make. The declaration in the *Gandy case* must, of course, be taken in connection with the facts of that case. The Court there explicitly states, as above quoted, that "there is nothing to suggest any limitation of the agent's power in these regards."

Distinguishing the case at bar from the *Gandy case,* it appears in the case at bar not only that the agent had nothing to do but to receive the application, forward it with the medical examination to the home office for approval, and upon receipt of the policy deliver it under and subject to the clearly stated conditions which would consummate a contract, but that there were plainly stipulated and agreed by both parties, limitations upon his authority.

I do not think that there can be any question but that an agent who is authorized to solicit insurance, receive premiums, write, countersign, and deliver policies, is the *alter ego* of the company, which would be bound by his knowledge and representations; whatever would amount to a waiver

of the provisions of the policy by the agent, under those circumstances, would amount to a waiver by the company.

As is said of the *Going case,* 58 S. C., 211, 36 S. E., 556, in the *Welch case:* "The case * * * had no such provision either in the application or the policy itself," referring to the condition precedent of the payment of the premium and the good health of the insured.

In *Huestess v. Ins. Co.,* 88 S. C., 31, 70 S. E., 403, no issue was presented suggesting a limitation upon the authority of the agent.

So, in *Graham v. Ins. Co.,* 48 S. C., 195, 26 S. E., 323, 59 Am. St. Rep., 707; *McCarty v. Ins. Co.,* 81 S. C., 152, 62 S. E., 1, 18 L. R. A. (N. S.), 729; *Kingman v. Ins. Co.,* 54 S. C., 599, 32 S. E., 762; *Cobb v. Ins. Co.,* 78 S. C., 388, 58 S. E., 1099; *Slawson v. Ins. Co.,* 82 S. C., 51, 62 S. E., 782; *Berry v. Ins. Co.,* 83 S. C., 13, 64 S. E., 859; *Etheredge v. Ins. Co.,* 102 S. C., 313, 86 S. E., 687; *Graham v. Ins. Co.,* 119 S. C., 218, 112 S. E., 88; *Hughes v. Ins. Co.,* 130 S. C., 383, 126 S. E., 125.

In *Rearden v. Ins. Co.,* 79 S. C., 526, 60 S. E., 1106, the Court said:

"There was no objection to this testimony because W. M. Hazel was the agent of the defendant and solicited insurance for the defendant in the community where Rearden lived, his name was signed to the application for insurance, any knowledge or information relating to the condition of Rearden, the insured, was the knowledge of the defendant, while the agent was acting within the scope of his authority. * * * All the Circuit Judge meant was that the case of Madden, just quoted, was an authority to him, for ruling that an agent, within the scope of his authority as such, would bind his principal by the admission so made. The agent has knowledge, such knowledge would be imputed to the principal. An insurance company, as a corporate entity, must conduct its business through the means of agents, and where such agents have knowledge of important facts bearing

upon the corporate business the knowledge of such agents is the knowledge of the corporation, if acquired within the scope of the agency."

The case of *McLaurin v. Ins. Co.*, 115 S. C., 59, 104 S. E., 327, is cited as "practically on all fours with the case at bar in many respects." I do not at all so regard it. That case turned upon two issues. Whether the insured was in good health at the time of the delivery of the policy, and whether the soliciting agents and the general agent elected, in view of the knowledge of all of them as to the health of the insured, to decline her offer to return the policy and hold· on to the notes.

The theory upon which the knowledge of the agent is imputed to the principal is that it is presumed that as he acquired it in the course of his agency he will communicate it to his principal. That presumption in the present case must break down for the reason that the applicant died in less than an hour after the policy was delivered, rendering it impossible for the agent to have communicated with his principal.

A further theoretical ground is that it would constitute an inexcusable fraud upon the insured that the company should be allowed to insist upon the non-performance of the condition precedent. It is difficult to comprehend how to hold the beneficiary to the contract entered into by the insured could constitute a fraud upon him or the beneficiary.

It is proposed to be held that because an agent is intrusted with the function of delivering a policy upon payment of the premium, he possesses the implied power to change the conditions by which the exercise of that function is expressly limited by contract.

Such a holding, in my opinion, is to apply a different rule to the relation of principal and agent in the matter of insurance contracts, from that applied to every other relation of principal and agent. I do not think that the right of a principal in every other relation, to circumscribe the power

of his agent, has ever been denied, particularly where the party dealing with the agent has express notice, as in the case at bar, of the limited power of the agent. It is difficult for me to comprehend how an authority raised only by implication can override an express stipulation in the contract, acceded to by the party claiming the implication, that such authority shall not exist.

It has been held in many cases, and rightly I think, that a provision limiting the power of an agent has no sacrosanct character over any other provision, and like all of them, is itself subject to waiver by the company; but would it not be a most illogical and unjust conclusion that the company should be held to have waived a provision limiting the power of the agent, by reason of the act of the agent himself in doing what he was forbidden to do? If a principal should be held bound by waiver or estoppel, simply by reason of the fact that the agent had exceeded his authority, there could not in any case be any virtue in the acknowledged right of the principal to limit the agent's authority.

If the agent has the power to waive the condition precedent that the applicant shall not have consulted or been treated by a physician since the medical examination, he is deciding upon the insurability of the applicant that which he is expressly inhibited from doing. The company has expressed its unwillingness to issue a policy under these circumstances; it has declined to issue it, and the applicant has agreed that it may not do so. May the agent then bind the company to a different contract from what it proposed to enter into and which the applicant agreed that it shall not?

I agree with Mr. Justice Blease in his conclusion that the cases of *Cooley v. Ins. Co.*, 153 S. C., 280, 150 S. E., 793, and *Welch v. Ins. Co.*, 124 S. C., 492, 117 S. E., 720, throw no light upon the issue of waiver which involves the authority of the local agent to bind the company by a contract that it did not propose to make; those cases were decided upon the ground that the good health of the insured was made

a condition precedent to the consummation of the contract; in both cases the failure of that condition justified in the *Cooley case,* a directed verdict for the defendant, and in the *Welch case,* a nonsuit; no issue of waiver was involved in either case.

I do not agree with his statement that the *Cooley case* "cannot be regarded as authority, because the other members of the Court concurred in the result thereof." The directed verdict was sustained upon two grounds: That the insured was not in good health at the time of delivery of the policy, and that she had been attended by a physician within less than a year before the date of the policy. Mr. Justice Blease concurred in the result with no indications; Mr. Justice Graydon concurred in the result upon the authority of the *Welch case*; Mr. Justice Carter wrote a concurring opinion, in the result, also upon the authority of the *Welch case;* Mr. Justice Stabler concurred in the result and in the concurring opinion of Mr. Justice Carter. So that four of the five Justices have reaffirmed the *Welch case,* and so far as the doctrine announced in that case is concerned, the *Cooley case* can be regarded as authority. I rely upon the *Welch case* as establishing the principle that the provision in the application was a condition precedent, and that is all.

For a very clear statement of the distinguishing features of waiver and estoppel, in addition to that contained in 40 Cyc., 255, see *Sovereign Camp v. Newsom,* 142 Ark., 132, 219 S. W., 759, 14 A. L. R., 903, at page 919. From this, it appears that in the present case there could have been no waiver, for that presupposes the existence of a valid contract; there could have been no estoppel, for the reason that the only conduct on the part of the applicant which could possibly have been induced by the conduct of the agent was what the applicant knew by the terms of the contract he did not have any right to.

It seems to me perfectly clear:

1. That the company had the right by convention to establish the conditions upon which it would enter into a contract with the applicant.

2. That the applicant is assumed to have agreed to those conditions when he signed the application.

3. That the company had the right to establish the orbit of the agent's authority.

4. That the applicant is assumed to have had notice of these limitations when he signed the application.

5. That it is conceded that the applicant consulted a physician and was treated by him between the date of the medical examination and the delivery of the policy.

6. That there was a plain breach of the condition precedent to the effectiveness of the policy, which has not been waived by the company.

7. That to deny the right of the company to treat the policy as not to have gone into effect, a right secured by contract, would be to impair the obligation of a contract, in violation of Article 1, § 10, of the United States Constitution, and of Article 1, § 8, of the State Constitution.